ON WRIT OF CERTIORARI
CARLSON, Presiding
Justice, for the Court:
¶ 1. Frederick Denell Grim was convicted by a Tunica County jury for the sale of cocaine. The circuit judge adjudicated Grim a habitual offender pursuant to Mississippi Code Section 99-19-83 (Rev.2007) and sentenced him to life imprisonment without the possibility of parole. On appeal, we assigned this case to the Court of Appeals, and that court addressed the six issues raised by Grim. The Court of Appeals affirmed the trial court’s judgment of conviction and sentence. Grim v. State, 102 So.3d 1123, (Miss.Ct.App.2010). We granted Grim’s petition for writ of certio-rari[1] to examine whether the trial court erred by allowing a laboratory supervisor, who neither observed nor participated in the testing of the substance, to testify in place of the analyst who had performed the testing. See Harness v. State, 58 So.3d 1, 4 (Miss.2011) (under Mississippi Rule of Appellate Procedure 17(h), this Court may limit the question for review upon grant of certiorari). Finding no error, we affirm.
PRELIMINARY ISSUE: COUNSEL ON APPEAL
¶ 2. As a preliminary matter, we must address Grim’s motion to dismiss appellate counsel and to represent himself. After this case was assigned to the Court of Appeals, and before briefing had begun, *1076 Grim filed a motion to dismiss his appointed counsel, the Indigent Appeals Division of the Office of State Public Defender.[2] On April 3, 2009, the Court of Appeals granted Grim’s motion in a single-judge order, allowing Grim to proceed pro se. The Court of Appeals affirmed Grim’s conviction, and this Court granted his pro se petition for writ of certiorari.
¶ 3. Finding insufficient evidence to determine whether Grim had knowingly and intelligently exercised his right to self-representation and waived his right to counsel, this Court ordered supplemental briefing on the matter from the Attorney General and the State Public Defender. Considering the matter further, this Court vacated the April 3, 2009, order of the Court of Appeals, suspended the appeal, and remanded Grim’s motion to the Tuni-ca County Circuit Court. On remand, the circuit court conducted a hearing and entered an order finding that Grim “knowingly and voluntarily desires to act as his own attorney on appeal,” and that he “has intelligently and completely waived the appointment of counsel on appeal.”
¶ 4. A criminal defendant has a constitutional right to effective assistance of counsel at trial and on his or her first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Neal v. State, 422 So.2d 747, 748 (Miss.1982); U.S. Const, amends. VI, XIV; Miss. Const, art. 3, § 26. The United States Supreme Court also has recognized a constitutional right to proceed without counsel at trial so long as the defendant “voluntarily and intelligently elects to do so.” Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Because of the inherent conflicts between the right to self-representation and the right to effective assistance of counsel, Uniform Circuit and County Court Rule 8.05 requires a trial court to conduct an “on the record ... examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney.” See also Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (“When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must ‘knowingly and intelligently’ forgo those relinquished benefits.”) While there is no federal constitutional right to self-representation on appeal, the states may provide one under their own constitutions. Martinez v. Court of Appeal of California, 528 U.S. 152, 163, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). The Mississippi Constitution reads, “[i]n all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both.... ” Miss. Const, art. 3, § 26. Accordingly, this Court has said that “it is elemental that an appellant, if mentally competent, has a right to discharge his attorneys and represent himself in this Court....” Tarrants v. State, 231 So.2d 493, 493 (Miss.1970).
¶ 5. Because a criminal defendant has a state constitutional right to self-representation on appeal, upon learning that a defendant wishes to proceed without counsel, Mississippi appellate courts have the same duty as trial courts, that is, to ensure that the defendant is making a waiver of his or her right to counsel, “knowingly and voluntarily.” URCCC 8.05. See Tarrants, 231 So.2d at 494 (remanding case to trial judge to conduct a factual hearing to determine whether appellant was mentally competent to repre *1077 sent himself). To this end, Mississippi Rule of Appellate Procedure 6(c)(2) (amended effective August 2, 2012), sets forth the procedures for allowing an indigent criminal appellant to dismiss appointed counsel and proceed pro se on appeal. “If it is determined that appellant has intelligently and competently waived the right to counsel on appeal, then the motion to dismiss counsel shall be granted.” Id.
¶ 6. On remand, the trial judge conducted a hearing on the record and thoroughly questioned Grim about his desire to proceed pro se. The trial judge also informed Grim of his constitutional rights and the perils of self-representation. Grim unequivocally expressed that he desired to act as his own attorney without the assistance of appointed counsel. Reviewing the transcript and the trial court’s order, we agree with the trial judge’s findings and hereby grant Grim’s Motion to Dismiss Counsel and lift the suspension of appellate proceedings. We now turn to the merits of Grim’s petition for writ of certio-rari.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 7. On February 15, 2007, the Mississippi Bureau of Narcotics and the Tunica County Police Department used confidential informant Terry Reed to conduct a controlled buy of cocaine from Frederick Denell Grim. A video and audio recording of the transaction was introduced at trial and played for the jury. Based on these events, Grim was indicted for selling cocaine in violation of Mississippi Code Section 41-29-139(a)(l) (Rev.2009). Grim’s indictment also alleged that he was a second and subsequent offender as defined in Mississippi Code Section 41-29-147 (Rev. 2009), and that he was a habitual offender under Mississippi Code Section 99-19-83 (Rev.2007).
¶ 8. The jury also heard testimony from Eric Frazure, a forensic scientist with the Mississippi Crime Laboratory. Over Grim’s objection, Frazure testified about the crime lab’s analysis of the substance purchased from Grim. Through Frazure, the State introduced the crime lab report that determined the substance to be cocaine. Frazure signed the report as the “technical reviewer,” but another scientist, Gary Fernandez, signed the report as the “case analyst.”
¶ 9. Frazure testified that he neither participated in Fernandez’s analysis nor observed his testing of the substance. Frazure’s involvement was that he had reviewed the report to ensure that Fernandez’s data supported the conclusions contained in his laboratory report. According to Frazure “[a] technical reviewer is part of the quality assurance, quality control methods within the crime laboratory. It ensures that we are doing quality work or correct work each and every time.”
¶ 10. Grim’s trial attorney timely objected to the admission of the report through Frazure, arguing that, without testimony from Fernandez, Grim would be denied his Sixth Amendment right to confront his accusers. U.S. Const, amend. VI. See also Miss. Const, art. 3, § 26 (“[i]n all criminal prosecutions the accused shall have a right ... to be confronted by the witnesses against him”). The trial court overruled Grim’s objection and allowed the State to introduce the crime lab report. On cross-examination, Frazure reiterated that he did not perform any testing and that he was not present when Fernandez tested the substance.
DISCUSSION
¶ 11. Grim contends that his right to confrontation was violated because he was not provided an opportunity to *1078 cross-examine Fernandez, the analyst who authored the forensic report admitted as evidence against him. Our standard of review governing the admission or exclusion of evidence is abuse of discretion. Williams v. State, 991 So.2d 593, 597 (Miss.2008) (citations omitted). However, this Court reviews constitutional issues de novo. Smith v. State, 25 So.3d 264, 267 (Miss.2009).

A. Confrontation-Clause Jurisprudence

¶ 12. The Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee a criminal defendant the right to confront and cross-examine the witnesses against him. U.S. Const, amend. VI; Miss. Const, art. 3, § 26 (1890). The United States Supreme Court has held that the Sixth Amendment Confrontation Clause bars the admission of “testimonial statements” made by a witness who does not appear at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. Crawford v. Wash., 541 U.S. 36, 53-54, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Though no exhaustive list defining testimonial statements exists, “[a] document created solely for an ‘evi-dentiary purpose’ ... ranks as testimonial.” Bullcoming v. N.M., — U.S. —, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011) (quoting Melendez-Diaz v. Mass., 557 U.S. 305, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009)). Forensic laboratory reports created specifically to serve as evidence against the accused at trial are among the “core class of testimonial statements” governed by the Confrontation Clause. Melendez-Diaz, 129 S.Ct. at 2532.
¶ 13. In Melendez-Diaz, the prosecution introduced three sworn certificates of state laboratory analysts, which provided that evidence seized from the defendant was cocaine, without any live testimony. Id. at 2531. Because the certificates, or affidavits, were the functional equivalent of live testimony, the analysts who had tested the substance were witnesses subject to the Confrontation Clause. Id. at 2532. The Supreme Court noted that forensic evidence is no more reliable or straightforward than any other form of testimonial evidence. Id. at 2536-38. Therefore, the prosecution was required to make the analysts available for Confrontation-Clause purposes. Id. at 2532.
¶ 14. In Bullcoming, the evidence introduced was “a forensic laboratory report certifying that Bullcoming’s blood-alcohol concentration was well above the threshold for aggravated DWI.” Bullcoming, 131 S.Ct. at 2709. The laboratory analyst who testified about the report “was familiar with the laboratory’s testing procedures, but had neither participated in nor observed the test on Bullcoming’s blood sample.” Id. The Supreme Court held that the “surrogate testimony” of a lab analyst “who did not sign the certification or perform or observe the test reported in the certification” did not satisfy the Sixth Amendment right to confrontation. Id. at 2710. In Justice Sotomayor’s separate opinion, concurring in part, she emphasized the “limited reach” of the Bullcom-ing decision, because the testifying analyst in that case “had no involvement whatsoever in the relevant test and report.” Id. at 2719, 2722 (Sotomayor, J., concurring in part). Justice Sotomayor stated:
[T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. [The testifying analyst] conceded on cross-examination that he played no role in producing the BAC report and did not observe any portion of ... the testing. It would be a differ *1079 ent case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results.
Id. at 2722 (Sotomayor, J., concurring in part) (emphasis added).[3]
¶ 15. This Court recently addressed the Sixth Amendment right to confrontation in Conners v. State, 92 So.3d 676 (Miss.2012). In Conners, the State introduced a toxicology report and a ballistics report through the testimony of a detective, and the detective was allowed to testify regarding the contents of the reports. Conners, 92 So.3d at 682. The detective was not involved in any way in the testing procedures or in preparing the reports, and the analysts who performed the underlying tests and prepared the forensic reports were not called to testify. Id. This Court held that “[b]ecause the forensic reports were testimonial in nature, the reports were inadmissible at Conners’s trial absent the analysts’ live testimony, and the admission of the reports violated the Confrontation Clause.” Mat684.
¶ 16. None of these cases stands for the proposition that, in every case, the only person permitted to testify is the primary analyst who performed the test and prepared the report. This Court has said that there are instances in which “someone other than the primary analyst who conducted the test can testify regarding the results.” Conners, 92 So.3d at 690 (Carlson, P.J., specially concurring, joined by Waller, C.J., Dickinson, P.J., Randolph, Lamar, Kitchens, Chandler, and Pierce, JJ.) (citing Melendez-Diaz, 129 S.Ct. at 2532 n. 1; McGowen v. State, 859 So.2d 320, 339-40 (Miss.2003)). To determine if a witness satisfies the defendant’s right to confrontation, we apply a two-part test:
First, we ask whether the witness has “intimate knowledge” of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand. [McGowen, 859 So.2d at 340]. Second, we ask whether the witness was “actively involved in the production” of the report at issue. Id. We require a witness to be knowledgeable about both the underlying analysis and the report itself to satisfy the protections of the Confrontation Clause.
Id. In McGowen v. State, this Court held, “when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks, then the testifying witness’s testimony does not violate a defendant’s Sixth Amendment rights.” McGowen, 859 So.2d at 339 (emphasis added). In McGowen, we held that, although one analyst had performed most of the testing, a second analyst who had assisted in the testing and in preparing the report was qualified to testify about the crime lab report. Id. The testifying analyst was “actively involved in the production of the report and *1080 had intimate knowledge of the analyses even though she did not perform the tests first hand.” Id. at 340.
¶ 17. The dissent implies that McGowen is not good law following the Supreme Court’s decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The dissent relies on a comment in Justice Kennedy’s dissenting opinion in Melendez-Diaz that Mississippi’s Sixth Amendment practices may not be capable of reconciliation with Melendez-Diaz. Dis. Op. at ¶ 33 (citing Melendez-Diaz, 129 S.Ct. at 2558 (Kennedy, J., dissenting)). With the utmost respect for Justice Kennedy, his statement that Mississippi “excuses the prosecution from producing the analyst who conducted the test, so long as it produces someone” is not an accurate representation of our law. Melendez-Diaz, 129 S.Ct. at 2558 (Kennedy, J., dissenting). Mississippi law requires far more than a “custodian” or “someone” who can authenticate the document; we require a witness — an analyst — who not only knows about the analysis performed, but is knowledgeable about the document as well. McGowen, 859 So.2d at 340. As in the case at hand, we do not always require “the particular analyst who conducted the test” to testify, because we recognize that some tests involve multiple analysts. Melendez-Diaz recognized this fact as well. See Melendez-Diaz, 129 S.Ct. at 2532 n. 1.
¶ 18. This Court’s decision in Barnette v. State, 481 So.2d 788 (Miss.1985), also highlights why Justice Kennedy’s comments are in error. In Barnette, the Court addressed Mississippi Code Section 13-1-114 (now repealed), which authorized certificates of physicians, chemists, and laboratory technicians to be admitted into evidence without affording a defendant the opportunity to cross-examine. Barnette, 481 So.2d at 790-91. This Court carefully construed the statute and held that “the certificate cannot be admitted without the in-court testimony of the analyst unless the defendant gives his pretrial consent and waives his right to confront.” Id. at 792. It has always been this Court’s understanding of the Sixth Amendment that, as long as a defendant timely objects that he is being denied his right to confrontation, the State then has the burden to present the witnesses against the defendant. Mississippi case-law regarding protection of defendants’ rights to confrontation has been consistent, and it is consistent with the ruling and reasoning in Melendez-Diaz as well.
¶ 19. The Court of Appeals correctly applied the principles from McGowen in Brown v. State, 999 So.2d 853 (Miss.Ct.App.2008). In that case, much like today’s case, the analyst called to testify was the laboratory manager, rather than the primary analyst who had performed the DNA tests at issue. Brown, 999 So.2d at 860. The analyst who had performed the DNA tests was not called to testify. Id. The testifying analyst had reviewed the work of the analyst who had performed the DNA tests, had conducted her own analysis of the testing, and had reached her own conclusions. Id. The Court of Appeals held that the laboratory manager was “sufficiently involved with the analysis and overall process so as to avoid violating Brown’s Sixth Amendment right of confrontation.” Id. at 861.[4]

*1081
B. Application

¶ 20. In today’s ease, the testifying witness was the laboratory supervisor, Eric Frazure. While Frazure was not involved in the actual testing, he had reviewed the report for accuracy and signed the report as the “case technical reviewer.” Frazure is much like the laboratory manager in Brown, who the Court of Appeals held was “sufficiently involved with the analysis and overall process” so that his testimony did not violate the defendant’s Sixth Amendment right of confrontation. Brown, 999 So.2d at 861. Frazure was able to explain competently the types of tests that were performed and the analysis that was conducted. He had performed “procedural checks” by reviewing all of the data submitted to ensure that the data supported the conclusions contained in the report. Based on the data reviewed, Fra-zure had reached his own conclusion that the substance tested was cocaine. His conclusion was consistent with the report, and he had signed the report as the technical reviewer. Frazure satisfied the McGowen test because he had “intimate knowledge” about the underlying analysis and the report prepared by the primary analyst.
¶ 21. The dissent takes the position that Frazure was a “surrogate” through whom the laboratory report should not have been admitted. Such a decision would take the standards set forth in McGowen and Bull-coming to a new level, finding that lab supervisors and case reviewers could not testify regarding testing and procedures that they supervised, reviewed, or verified, and on which they based their own conclusions, inapposite to what was settled in McGowen.
¶ 22. We hold that a supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was “actively involved in the production of the report and had intimate knowledge of analyses even though [he or] she did not perform the tests first hand.” McGowen, 859 So.2d at 340. Frazure met this standard, and the trial court did not abuse its discretion by allowing him to testify. Grim had the opportunity to confront and cross-examine Frazure at trial, which satisfied his Sixth Amendment right to confront the witness against him.
CONCLUSION
¶ 23. We agree with the Court of Appeals that the circuit court did not abuse its discretion by allowing Frazure to testify regarding the laboratory report and his conclusion that the substance seized from Grim was cocaine. Our de novo review of the constitutional issue before us leads us to the conclusion that Grim’s constitutional right to confrontation was not violated. The judgments of the Court of Appeals and the Circuit Court of Tunica County are affirmed.
¶ 24. THE JUDGMENTS OF THE COURT OF APPEALS AND THE CIRCUIT COURT OF TUNICA COUNTY ARE AFFIRMED. CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF LIFE WITHOUT PAROLE, AS A HABITUAL AND SECOND AND SUBSEQUENT OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.
*1082 WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND CHANDLER, J. KING, J., NOT PARTICIPATING.

. Grim v. State, 50 So.3d 1003 (Miss.2011) (Table).

. At the time, the Office of State Public Defender did not exist, and Grim was represented by the Office of Indigent Appeals. Miss. Code Ann. § 99-18-1 (Supp.2011).

. We acknowledge an even more recent Supreme Court case that addressed the Confrontation Clause—Williams v. Illinois, — U.S. —, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012). In Williams, an expert was allowed to opine about matching the defendant's DNA profile, but the analyst who recovered and tested the DNA was not called to testify. Id. at 2227. The plurality concluded that the expert testimony did not violate the Confrontation Clause because the DNA report relied on by the expert "was not prepared for the primary purpose of accusing a targeted individual” and it was not a "formalized statement” like the certificates or affidavits found in Bullcoming and Melendez-Diaz. Id. at 2242-44 (citing Bullcoming, 131 S.Ct. at 2710-11; Melendez-Diaz, 557 U.S. at 308-09, 129 S.Ct. 2527). Williams has no bearing on the case at hand because we do not dispute that the forensic report at issue is "testimonial” and that it is the type of document subject to the Confrontation Clause.

. See also Mooneyham v. State, 842 So.2d 579, 586-87 (Miss.Ct.App.2002) (defendant's Sixth Amendment rights were not violated where laboratory supervisor, who did not conduct the actual testing but verified the results of the analysis, was allowed to testify regarding the test results and chain of custody); Gray v. State, 728 So.2d 36, 55-57 (Miss.1998) (defendant’s Sixth Amendment right was not violated where he was able to cross- *1081 examine and confront the expert who testified regarding the conclusion she reached after evaluating the results of DNA tests performed by a technician under her supervision).