KITCHENS, Justice,
dissenting:
¶ 258. While I fully join the dissents of Presiding Justice Dickinson and Justice King, I write separately to clarify the analysis of the Confrontation Clause issue in section three of the majority opinion. The majority ultimately is correct in finding that Leslie Galloway’s Confrontation Clause rights were satisfied through the testimony of Bonnie Dubourg, the DNA analyst who did not physically test the samples but who analyzed the results of those tests to determine that the DNA samples matched and to implicate Galloway as a perpetrator. However, I disagree that this Court’s analysis in Grim v. State, 102 So.3d 1073 (Miss.2012), regarding forensic testing of a substance to determine whether it was cocaine, is the proper lens through which to view the question presented in this particular case. In Grim, this Court addressed the receipt into evidence of a testimonial statement. Under Williams v. Illinois, — U.S. -, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), the challenged statements of the nontestifying DNA analyst, Julie Golden, are nontesti-monial. The testimonial statements that implicated Galloway were made by Du-bourg, who performed an analysis of her own and testified. Therefore, Galloway’s confrontation rights were not violated. Accordingly, our analysis should proceed under the Supreme Court’s reasoning in Williams, not this Court’s reasoning in Grim.
¶ 259. In order for a statement or an item of evidence to implicate a defendant’s right to confront one or more witnesses against him, it must be testimonial. See Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In
*684 Grim, this Court confronted the admission of a forensic report which positively identified the substance the defendant was alleged to have sold as cocaine. Grim, 102 So.3d at 1077. The report was clearly testimonial because it was offered as proof that the substance the defendant had sold was an illegal narcotic. The Court noted that “[fjorensic laboratory reports created specifically to serve as evidence against the accused at trial are among the ‘core class of testimonial statements’ governed by the Confrontation Clause.” Id. at 1078 (quoting Melendez-Diaz v. Mass., 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009)). Melendez-Diaz addressed whether a defendant had the right to confront analysts who had tested a substance and provided testimonial statements that the substance was cocaine. Melendez-Diaz, 557 U.S. at 308, 129 S.Ct. 2527. In Grim, this Court also relied on the Supreme Court’s decision in Bullcoming v. N.M., — U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), regarding whether the defendant had the right to confront the analyst who certified that his blood-alcohol level was above the legal limit when he was driving. In Grim, Melendez-Diaz, and Bullcoming, the statement at issue clearly was testimonial because it was a simple “Yes/No” result that was directly inculpa-tory to the defendant.[10] See Williams, 132 S.Ct. at 2240.
¶260. I dissented in Grim because I found that the testimonial report which concluded that the substance the defendant had sold was cocaine invoked the Confrontation Clause under Melendez-Diaz and Bullcoming, and the person who actually conducted the testing should have testified. Grim, 102 So.3d at 1082 (Kitchens, J., dissenting). See also Jenkins v. State, 102 So.3d 1063, 1070 (Miss.2012) (Kitchens, J., dissenting). However, I noted, based on the holding in Williams, that the complex nature of DNA testing could involve a “primary analyst.” Grim, 102 So.3d at 1084 (citing Gray v. State, 728 So.2d 36, 56-57 (Miss.1998)). In the case of DNA testing, the underlying reports of the nontestifying expert, if used only as a premise to support the testifying expert’s opinion, may not be testimonial. Id. (citing Williams, 132 S.Ct. at 2221). In Williams, the testifying expert was the person who had analyzed the results of the DNA testing to determine whether the sample from the crime scene and the test sample matched. Id. at 2240. The underlying report upon which the expert’s conclusions were based was not admitted into evidence. Id. The Court found that the expert’s assertion that the two samples matched was true and not reliant at all upon the validity of the underlying testing used to generate the DNA profiles. Id. The expert simply had compared the two profiles and determined that they matched. Id. The “testimonial statement” and the statement that was incriminating of the defendant was that the two profiles matched, not that the report contained an accurate profile of the defendant’s DNA. The Court found that this holding was in line with Melendez-Diaz and Bullcoming, in which the reports clearly were testimonial, as they were facially incriminating and were offered for the truth of what they asserted, while in Williams, the report was not offered for the truth of what it asserted, but instead was offered “to establish that the report contained a DNA profile that matched the DNA profile deduced from the [defendant’s] blood.” Id.
*685 ¶ 261. The situation we address is strikingly similar to that found in Williams. As in Williams, here, the results of the actual DNA testing were not received into evidence. Instead, the result of the testing served as a premise upon which the testifying expert could determine whether two DNA samples matched. Under Williams, the testimonial and incriminatory statements were made by Dubourg, not by Golden, because Dubourg was the analyst who had concluded that the DNA samples from multiple areas of the crime scene matched Galloway’s known DNA sample. Dubourg stated that Golden “actually ran the samples, and [Dubourg] analyzed her data.” Golden’s test results merely offered a profile, and, as such, were not testimonial statements under Williams. Dubourg testified about her own expert conclusion that the known sample from Galloway matched the DNA on several objects found at the crime scene. The defense was permitted to cross-examine her regarding this incriminatory conclusion. Accordingly, Galloway’s right to confront the witness against him was satisfied because Dubourg, not Golden, made the testimonial statements, and Dubourg was the one who testified. This is not unlike a physician’s reliance upon laboratory reports of tests that the physician had not performed personally. If the physician routinely relied on such information to make diagnoses, or to provide an expert opinion in court, we do not require the laboratory technician’s testimony as a predicate to the physician’s expert testimony concerning the diagnosis. See Gray, 728 So.2d at 57 (Miss.1998) (noting that, under Rule 703 of the Mississippi Rules of Evidence, “the opinion of the nontestifying expert would serve simply as a premise supporting the testifying expert’s opinion on a broader issue”) (citation omitted).[11]
¶ 262. Because the challenged report is not testimonial, and the expert with whom the testimonial statement had originated testified at trial, Leslie Galloway’s right to confront the witnesses against him was not violated. The majority takes a much longer route to reach this conclusion by analyzing the issue under Grim, in which this Court addressed the admission of a clearly testimonial statement. The challenged statement in this case is nontestimonial under Williams, and should be treated as such in our analysis. Therefore, I respectfully disagree with the majority’s analysis of that issue, I also fully join the dissents of Presiding Justice Dickinson and Justice King.
DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.

. In Grim and Melendez-Diaz, the substance the defendant had possessed was in fact cocaine, and the certification of that fact went directly to the defendant’s guilt. So too in Bullcoming, where the certification that the defendant’s blood alcohol level was above the legal limit directly incriminated him.

. A physician, for example, bases his medical diagnosis of his patient on many sources. Most of his sources are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. Since these sources provide the doctor with information that he utilizes in making life-and-death decisions, his validation of them ought to be sufficient for trial, especially since he can be cross-examined.
M.R.E. 703 cmt. (quoted in Gray, 728 So.2d at 57).