CHANDLER, Justice,
dissenting:
¶ 19. For the reasons cogently set forth in the dissents of Presiding Justice Dickinson and Justice Kitchens in Grim v. State, 102 So.3d 1073 (Miss.2012), and Jenkins v. State, 102 So.3d 1063 (Miss.2012), I respectfully dissent. I cannot sanction this Court’s holding that testimony from a lab supervisor who merely reviewed and signed a lab report, but did not perform, or even observe, the test at issue satisfies the Confrontation Clause. Because Gary Fernandez did not perform or observe the testing in this case, he lacked any knowledge of the particular test and testing process and could not meaningfully respond to cross-examination. I would find that the admission of the test results through Fernandez’s testimony constituted plain error that entitles Hingle to a new trial.
¶ 20. The United States Supreme Court has held that laboratory reports created to serve as evidence against the accused at trial are within the “core class of testimonial statements” covered by the Confrontation Clause. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009). In Melendez-Diaz, the prosecution placed into evidence sworn certificates of analysis stating that the substance taken from the defendant had been tested and found to be cocaine. Id. at 308, 129 S.Ct. at 2531. The Court held that the certificates were testimonial because they were “functionally identical to live, in-court testimony, doing ‘precisely what a witness does on direct examination.’ ” Id. at 310, 129 S.Ct. at 2532 (quoting Davis v. Washington, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). The Court held that, because the certificates were testimonial, they were inadmissible unless the analysts were unavailable and there had been a prior opportunity to cross-examine them. Melendez-Diaz, 557 U.S. at 311, 129 S.Ct. at 2532. Explaining its rationale for requiring live testimony from the analysts, the Court stated:
Confrontation is one means of assuring accurate forensic analysis. While it is true ... that an honest analyst will not alter his testimony when forced to confront the defendant, ... the same cannot be said of the fraudulent analyst. ... Like the eyewitness who has fabricated his account to the police, the analyst who provides false results may, under oath in open court, reconsider his false testimony.
[[Image here]]
*667 Confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well. Serious deficiencies have been found in the forensic evidence used in criminal trials.
[[Image here]]
[TJhere is little reason to believe that confrontation will be useless in testing analysts’ honesty, proficiency, and methodology-the features that are commonly the focus in the cross-examination of experts.
Id. at 318-20,129 S.Ct. at 2537-88.
¶21. In Bullcoming v. New Mexico, — U.S. —, 131 S.Ct. 2705, 2710, 180 L.Ed.2d 610 (2011), the Supreme Court found that the Confrontation Clause prevents the state from introducing a forensic laboratory report through the testimony of an analyst “who did not sign the certification or. perform or observe the test reported in the certification.” In Bullcoming’s drunk-driving prosecution, the State did not produce the analyst who had signed the lab report certifying that Bullcoming’s blood alcohol level was above the threshold for aggravated driving while intoxicated. Id. at 2709. Rather, the State presented another analyst who was familiar with the lab’s procedures but had not participated in or observed the test of Bullcoming’s blood. Id. The Supreme Court held that the State’s use of a surrogate analyst who had not signed the certification or performed or observed the test fell short of satisfying Bullcoming’s right of confrontation; the surrogate analyst “could not convey what [the tester] knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst’s part.” Id. at 2710, 2715.
¶ 22. The Supreme Court faced a variation on this theme in Williams v. Illinois, — U.S.—, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012). In Williams, an expert testified that a DNA profile developed by an outside lab from a rape victim’s vaginal swabs matched a DNA profile of the defendant developed by the state crime lab. Id. at 2227. The State did not introduce live testimony from an analyst from the outside lab. Id. A plurality of the Court held that the admission of the outside lab’s DNA profile did not violate the Confrontation Clause because it had not been offered to prove the truth of the matter asserted. Id. at 2236. Rather, the testimony about the outside lab’s DNA profile was admitted to explain the basis for the expert’s opinion that the two profiles matched. Id. at 2239; see M.R.E. 703 (“the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing”). The plurality held that, because the outside lab’s DNA profile was not offered for its truth, but instead to show the underlying facts and data the expert used to reach her opinion, the Confrontation Clause did not apply. Id. at 2240. The plurality also found that the outside lab’s report was not testimonial because it was not created for the primary purpose of accusing “a targeted individual.” Id. at 2243.
¶23. In this case, Fernandez testified that Reed’s test of the pills had revealed them to contain morphine. He testified that he went over Reed’s report “line by line” to make sure everything was correct, that is, that the report was “what it says it is,” and that the results were commensurate with the testing methods. Fernandez testified that he reached his own conclusion that the pills contained morphine based his own independent review of Reed’s work. Reed’s report was not admitted into evidence. Nonetheless, because the sole purpose of Fernandez’s tes *668 timony was to relay the contents of that report to the jury, Fernandez was a “mere conduit[ ] for hearsay.” Id. at 2241. Unlike in Williams, Fernandez did not rely on the report to reach his own independent, expert opinion, because his opinion was entirely based on the results of another analyst’s test.
¶ 24. The facts of today’s case are virtually indistinguishable from those in Bull-coming. As in Bullcoming, the State presented the testimony of an analyst who was familiar with the lab’s procedures but had neither participated in nor observed the test at issue. Relying on Grim v. State, 102 So.3d 1073 (Miss.2012), and Jenkins v. State, 102 So.3d 1063 (Miss.2012), the majority finds that this case is distinguishable from Bullcoming because, here, the testifying analyst peer-reviewed the report and signed it. In Grim and Jenkins, the testifying analyst’s involvement was limited to having reviewed and signed a report of testing performed by another analyst. Grim, 102 So.3d at 1077; Jenkins, 102 So.3d at 1065. The testifying analysts had neither observed the tests nor performed any part of the tests. Grim, 102 So.3d at 1077; Jenkins, 102 So.3d at 1065. Relying heavily on pre-Crawford precedent, this Court held that “when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks, then the testifying witness’s testimony does not violate a defendant’s Sixth Amendment rights.” Grim, 102 So.3d at 1079 (quoting McGowen v. State, 859 So.2d 320, 339 (Miss.2003)); Jenkins, 102 So.3d at 1067-68 (quoting McGowen, 859 So.2d at 339). The Court held that “a supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was ‘actively involved in the production of the report and had intimate knowledge of [the] analyses even though [he or] she did not perform the tests first hand.’ ” Grim, 102 So.3d at 1081 (quoting McGowen, 859 So.2d at 340); Jenkins, 102 So.3d at 1069 (quoting McGowen, 859 So.2d at 340). .
¶ 25. Applying these rules, the Court in Jenkins and Grim held that the individual defendant’s right of confrontation was satisfied by the testimony of an analyst who had reviewed the report for accuracy and signed it as a technical reviewer. Grim, 102 So.3d at 1081, Jenkins, 102 So.3d at 1069. In Grim, the analyst
was able to explain competently the types of tests that were performed and the analysis that was conducted. He had performed “procedural checks” by reviewing all of the data submitted to ensure that the data supported the conclusions contained in the report. Based on the data reviewed, [he] had reached his own conclusion that the substance tested was cocaine. His conclusion was consistent with the report, and he had signed the report as the technical reviewer. [He] satisfied the McGowen test because he had “intimate knowledge” of the underlying analysis and the report prepared by the primary analyst.
Grim, 102 So.3d at 1081.
¶ 26. Three justices dissented in Grim and four in Jenkins. Grim, 102 So.3d at 1082 (Kitchens, J., dissenting, joined by Dickinson, P.J., and Chandler, J.; King, J., not participating) (Dickinson, P.J., dissenting to the denial of rehearing, joined by Kitchens and Chandler, JJ.); Jenkins, 102 So.3d at 1070 (Kitchens, J., dissenting, joined by Dickinson, P.J., Chandler and King, JJ.). The dissents would have held that a lab supervisor who reviewed and signed the report but did not perform or observe the test is a surrogate witness for the analyst who actually performed the test. Grim, 102' So.3d at 1083; Jenkins, *669 102 So.3d at 1070. The dissents opined that presenting the test results through technical reviewers who neither observed nor performed the tests violated the defendants’ right to confrontation. Grim, 102 So.3d at 1083; Jenkins, 102 So.3d at 1070. This is because such a witness lacks firsthand knowledge of the specific test at issue, depriving the defendant of the caliber of cross-examination demanded by the Sixth Amendment. Jenkins, 102 So.3d at 1070.
¶ 27. Problematically, the majority relies upon McGowen, which is pre-Craw-ford, pre-Bullcoming precedent, to conclude that testimony from an analyst who has performed procedural checks, but has not performed or observed the test at issue, satisfies the Confrontation Clause. I would find that this Court’s approval of testimony by a supervisor who merely reviewed and signed off on the report of another’s test results does not comport with what is required by Bullcoming. In Bullcoming, the Supreme Court held that testimony by an analyst “who did not sign the certification or perform or observe the test reported in the certification” did not satisfy the defendant’s confrontation rights. Bullcoming, 131 S.Ct. at 2710. The Court held that such “surrogate testimony” could not convey what the testing analyst knew or observed about the particular test and testing process. Id. at 2715. The use of surrogate testimony could not “expose any lapses or lies on the certifying analyst’s part.” Id. Although Bullcoming stated that an analyst who “sign[ed] the certification” could testify, it emphasized that the testifying analyst must have knowledge of the events of the particular test, such as whether the sample received was intact with the seal unbroken, and whether the tester precisely adhered to the proper protocol in conducing the test, because these issues are “meet for cross-examination.” Id. at 2714. Plainly, Bull-coming contemplates that an analyst who signed the report must have knowledge of the events of the particular test in order to satisfy the Confrontation Clause. Merely reviewing and signing off on another analyst’s test report is not enough to satisfy the requisites outlined in Bullcoming— that the testifying analyst have personal knowledge of the particular test and testing process employed so that any deviations from protocol or lapses or lies on the testing analyst’s part can be identified. Id. at 2715, 2716 n. 8.
¶ 28. Fernandez, who merely reviewed a report of a test generated by Reed, lacked personal knowledge of the events of the specific test. Certainly, Fernandez reviewed the test results, was familiar with the testing process, and was equipped to testify on whether the written report showed that the test comported with proper procedures and whether the results of the test were commensurate with the testing devices used. He testified in terms of what Reed “would” have done to conduct the test, and that it appeared from the report that Reed’s result was correct. But he could not testify as to whether Reed had received the sample intact, whether Reed had dropped or mishandled the sample, or whether Reed had encountered any problems with the testing equipment. Additionally, Fernandez’s surrogate testimony could not “expose any lapses ór lies on [Reed’s] part.” Id. at 2715. Fernandez’s testimony did not afford Hingle the opportunity to cross-examine the analyst who had performed or observed the test on what that analyst “knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed,” as required by Bullcoming. Id. I observe that the State could have satisfied the Confrontation Clause here by simply having had Fernandez retest the *670 pills and testify about the results of the retest. Id. at 2718.
¶29. Because Grim and Jenkins are inconsistent with the strictures of Bull-coming, I would overrule those cases. I would hold that, although Fernandez reviewed and signed the test report, because he did not perform or observe the testing of the pills, his surrogate testimony did not satisfy Hingle’s confrontation rights under the Sixth Amendment. Without evidence establishing that the pills contained morphine, the State would not have been able to prove the elements of sale of morphine. Therefore, permitting Fernandez to testify as a surrogate for Reed, in violation of the Confrontation Clause, constituted a manifest injustice amounting to plain error. “[T]he [Confrontation] Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another’s testimonial statements provides a fair enough opportunity for cross-examination.” Id. at 2716. I would reverse and remand for a new trial.
DICKINSON, P.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.