KITCHENS, JUSTICE,
CONCURRING IN PART AND IN RESULT:
¶ 89.1 write separately because Travaris Christian was not afforded the opportunity to cross examine Dr. Adel Shaker, the forensic pathologist who conducted the autopsies of the homicide victims. Instead, the findings of Dr. Shaker, in the form of notes and photographs, were brought to the attention of the jury through the testimony of a surrogate witness, Dr. Erin Barnhart, in violation of the Confrontation Clause. Nevertheless, because the extent of Dr. Barnhart’s testimony was that the victims had succumbed to gunshot wounds, I would conclude that the Confrontation Clause violation constituted harmless error.
¶ 90. In all criminal proceedings, the accused enjoys the right to confront his or her accuser. U.S. Const, amend. VI, Miss. Const, art. 3, § 26. The United States Supreme Court has held that the Confrontation Clause disallows “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.” Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In 2009, the Court held that “affidavits reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine” constituted testimonial stateménts and that their admission violated the Confrontation Clause “[ajbsent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them .... ” Melendez-Diaz v. Mass., 557 U.S. 305, 307, 310-11, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (emphasis in original). In 2011, the Court held that the Confrontation Clause is violated when a surrogate analyst witness, having neither participated in nor observed the testing itself, testifies regarding the results of a forensic laboratory report certifying the defendant’s blood-alcohol content. Bullcoming v. N.M., 564 U.S. 647, 652, 131 S.Ct. 2705, 180. L.Ed.2d 610 (2011).
¶ 91. A plurality of the Supreme Court considered whether a surrogate expert witness could, consistent with Crawford and its progeny, testify “that a DNA profile produced by an outside laboratory, Cellmark, matched a profile produced by the state police lab using a sample of petitioner’s blood.” Williams v. Ill., 567 U.S. 50, 132 S.Ct. 2221, 2227, 183 L.Ed.2d *1226 89 (2012). The testimony substantiated that the DNA from the defendant matched semen collected from vaginal swabs. Id. at 2237.
¶ 92. A plurality[8] of the Court distinguished the case from Bullcoming and Melendez-Diaz by pointing out that, in those cases, forensic reports were admitted into evidence “for the purpose of proving the truth of what they asserted: in Bullcoming that the defendant’s blood alcohol level exceeded the legal limit and in Melendez-Diaz that the substance in question contained cocaine.” Id. at 2240. In Williams, the plurality found, the expert witness testified only that the DNA profile report produced by the laboratory matched the defendant’s DNA. Id. The expert witness did not, according to the plurality, testify to the truth of the matter asserted, that the DNA profile report from the vaginal swab accurately represented the defendant’s DNA. Id. The plurality found further that the report was not prepared for an accusatory purpose, but rather to capture a rapist who remained at large. Id.
¶ 93. The dissent argued that the Confrontation Clause plainly was violated when an expert witness testified regarding the contents of the DNA profile report which identified the defendant, in the absence of his having been given the opportunity to cross examine the report’s preparer: “[t]he report at issue here shows a DNA profile produced by an analyst at Cellmark’s laboratory allegedly from a vaginal swab taken from a young woman, L.J., after she was raped. That report is identical to the one in Bullcoming (and Melendez-Diaz) —” Williams, 132 S.Ct. at 2266 (Kagan, J., dissenting). The report, according to the dissent, was created for the purpose of establishing the identity of the perpetrator and, therefore, “the substance of the report could come into evidence only if Williams had a chance to cross-examine the responsible analyst.” Id. at 2267. The dissent posed the question “[h]ave we not already decided this case?” and noted that it had “[b]een there, done that” in Melendez-Diaz and Bullcoming. Id. at 2267, 2275.
¶ 94. This Court has struggled with the application of the Confrontation Clause in the context of admission of forensic evidence in the absence of testimony of the testing forensic analyst. See Conners v. State, 92 So.3d 676 (Miss. 2012) (admission of a firearm identification report and a toxicology report violated the Confrontation Clause but was deemed harmless error because the firearm identification report did not establish conclusively that the spent shell casings came from the shotgun found at the scene and the toxicology report supported the defendant’s theory of defense); Jenkins v. State, 102 So.3d 1063 (Miss. 2012) (Confrontation Clause not violated where witness testified that the substance found in the possession of the defendant was cocaine. Although the witness was a mere technical reviewer who did not test the substance but rather reviewed a report prepared by the primary analyst who actually had conducted the testing, the technical reviewer was actively involved in the production of the report and had intimate knowledge of the analyses); Grim v. State, 102 So.3d 1073 (Miss. 2012) (same); Dingle v. State, 153 So.3d 659 (Miss. 2014) (Confrontation Clause not violated where technical reviewer, who reviewed the report of the primary analyst but did not test the substance, testified *1227 that pills in the possession of the defendant contained morphine).
¶ 95. Three of my colleagues and I declined to join this Court’s decisions in Jenkins, Grim, and Hingle, holding that “the admission of [the analyst’s] laboratory report via [the technical reviewer’s] testimony, without the defendant’s having had a prior opportunity to cross-examine [the analyst], violated [the defendant’s] constitutional right to confrontation, thereby impairing his right to a fair trial.” Grim, 102 So.3d at 1082 (Kitchens, J., dissenting). We agreed that the technical reviewer “could not testify as to whether [the analyst] had received the sample intact, whether [the analyst] had dropped or mishandled the sample, or whether [the analyst] had encountered any problems with the testing equipment” and that the technical reviewer’s “surrogate testimony could not ‘expose any lapses or lies on the analyst’s part.’ ” Hingle, 153 So.3d at 669 (Chandler, J., dissenting) (citing Bullcoming, 131 S.Ct. at 2715).[9]
¶ 96. Never before has this Court or the United States Supreme Court considered whether a forensic pathologist who did not conduct an autopsy could, consistent with the Confrontation Clause, Crawford, Melendez-Diaz, and Bullcoming, testify as a surrogate witness about the autopsy’s results. Justice Kennedy pointed out in his dissent in Melendez-Diaz that “every court post-Crawford has held that autopsy reports are not testimonial.” Melendez-Diaz, 557 U.S. at 335, 129 S.Ct. 2527 (Kennedy, J., dissenting) (citing Carolyn Zabrycki, Toward a Definition of “Testimonial”: How Autopsy Reports Do Not Embody the Qualities of a Testimonial Statement, 96 Cal. L. Rev. 1093, 1094 (2008)).
¶ 97. More recently, another commentator has opined that forensic autopsy reports themselves constitute testimonial statements because they “formally describe autopsy findings and report the cause and manner of death” and that “[f]o-rensic pathologists are quite aware that their autopsy reports will be evidentiary and that the testimony of a forensic pathologist will be sought- at trial.” Marc D. Ginsberg, The Confrontation Clause and Forensic Autopsy Reports—A “Testimonial,” 74 La. Law Rev. 117, 171 (2013). As such, “the accused must be entitled to confront and cross-examine the examining forensic pathologist to test the validity of the autopsy and the pathologist’s observations, conclusions, and opinions.” Id.
¶ 98. A split of federal and state authority exists on the question of whether autopsy reports and/or surrogate testimony about the autopsy results are testimonial for purposes of a Confrontation Clause analysis. Various federal courts articulate a variety of reasons why autopsy reports are not testimonial and, as such, do not implicate the Confrontation Clause at all. See U.S. v. De La Cruz, 514 F.3d 121 (1st Cir. 2008) (an autopsy report is a business record kept in the course of regularly conducted business activity and is expressly excluded from the scope of Crawford); Nardi v. Pepe, 662 F.3d 107 (1st Cir. 2011) (an autopsy report is distinguishable from the sworn documents at issue in Melendez-Diaz and Bullcoming); Hensley v. Roden, 755 F.3d 724, 735 (1st Cir. 2014) (no Confrontation Clause violation where surrogate medical examiner testified about the autopsy report prepared by another because, at the time the decision was made to allow the testimony “it was not settled that autopsy reports fell within the *1228 core class of testimonial documents enumerated in Crawford”); U.S. v. Feliz, 467 F.3d 227 (2d Cir. 2006) (an autopsy report is not testimonial because it is a business record); U.S. v. James, 712 F.3d 79 (2d Cir. 2013) (an autopsy report is not testimonial because it is not created to establish a fact at trial); Mitchell v. Kelly, 520 Fed.Appx. 329 (6th Cir. 2013) (per curiam) (given the lack of guidance from the Supreme Court, autopsy reports are admissible as nontestimonial business records and no Confrontation Clause violation occurs where a surrogate witness testifies regarding its contents); McNeiece v. Lattimore, 501 Fed.Appx. 634, 636 (9th Cir. 2012) (testimony from surrogate witness .about the autopsy results “was not contrary to or an unreasonable application of clearly established federal law” and the autopsy report was a nontestimonial business record); U.S. v. MacKay, 715 F.3d 807 (10th Cir. 2013) (defendant had an opportunity to object to the autopsy report’s admission on the basis of Bullcoming but failed to do so).
¶ 99. Other federal courts deem autopsy reports to be testimonial or assume that they are testimonial. See Martinez v. Davis, 653 Fed.Appx. 308 (5th Cir. 2016) (any Confrontation Clause error in admitting autopsy reports and testimony of surrogate pathologist was harmless because other evidence linked defendant to the crime); U.S. v. Ignasiak, 667 F.3d 1217 (11th Cir. 2012) (an autopsy report is testimonial because it is prepared for use at trial; the surrogate medical examiner witness’s testimony about contents of the autopsy reports violated the Confrontation Clause because the surrogate “had neither performed nor been present during the autopsies in question” and therefore “was not in a position to testify on cross-examination as to the facts surrounding how the autopsies were actually conducted or whether any errors, omissions, or mistakes were made”); U.S. v. Moore, 651 F.3d 30, 74 (D.C. Cir. 2011) (“Assuming error with respect to admission of the autopsy reports, and thus not reaching the question left open in Bullcoming, ... we hold the error was harmless beyond a reasonable doubt” because evidence presented substantiated that the murders in question were accomplished by gunshots); U.S. v. Bostick, 791 F.3d 127 (D.C. Cir. 2015) (no plain error in admitting the autopsy reports because they “did not play an important role in the trial” because there was no dispute that gunshots killed the victims), petition for cert. filed, Edelin v. U.S. (U.S. July 7, 2016) (No. 05-3010).
¶ 100. States, likewise, disagree with regard to testimony of surrogate witnesses about the autopsy results and admissibility of autopsy reports, themselves. Many states hold that autopsy reports are non-testimonial and that a surrogate pathologist may, consistent with the Confrontation Clause, express independent conclusions about the autopsy. See State v. Medina, 232 Ariz. 391, 306 P.3d 48 (2013) (autopsy report is not testimonial because its primary purpose is not to identify a particular suspect; surrogate witness’s testimony concerning that witness’s independent conclusions about the autopsy does not violate the Confrontation Clause); People v. Leon, 61 Cal.4th 569, 189 Cal.Rptr.3d 703, 352 P.3d 289 (2015) (the conclusions of the surrogate witness were recited from the autopsy report of a deceased forensic pathologist, which was admitted; assuming those were admitted erroneously, they were harmless beyond a reasonable doubt because the cause of death, shooting, was undisputed); People v. Dungo, 55 Cal.4th 608, 147 Cal.Rptr.3d 527, 286 P.3d 442 (2012) (no Confrontation Clause violation where surrogate pathologist expressed his own opinions based on a nontestifying forensic pathologist’s autopsy report); People v. Leach, 366 Ill.Dec. 477, 980 N.E.2d 570 (2012) (autopsy report qualifies as a *1229 business record and is nontestimonial because it is not prepared for the primary purpose of providing evidence against the accused; surrogate pathologist’s testimony about autopsy report did not violate the Confrontation Clause); State v. Maxwell, 139 Ohio St.3d 12, 9 N.E.3d 930 (2014) (autopsy reports are created for the primary purpose of documenting cause of death for public records and surrogate pathologist’s testimony about the autopsy report did not violate the Confrontation Clause because he provided independent conclusions about cause and manner of death); State v. Craig, 110 Ohio St.3d 306, 853 N.E.2d 621 (2006) (an autopsy report admissible as a nontestimonial business record;' surrogate pathologist’s testimony about the autopsy findings did not violate the Confrontation Clause); State v. Cutro, 365 S.C. 366, 618 S.E.2d 890 (2005) (an autopsy report is a public record and, therefore, is not testimonial; surrogate pathologist’s testimony satisfied the right of the accused to confront the pathologist); State v. Hutchison, 482 S.W.3d 893 (Tenn. 2015) (an autopsy report is admissible as a business record; testimony of surrogate pathologist, therefore, did not violate the Confrontation Clause).
¶ 101. Other states take different approaches. See Commonwealth v. Reavis, 465 Mass. 875, 992 N.E.2d 304 (2013) (surrogate medical examiner may not testify about an autopsy report that is not admitted, but such testimony amounted to harmless error because the testimony was cumulative of properly admitted evidence); Commonwealth v. Avila, 454 Mass. 744, 912 N.E.2d 1014 (2009) (surrogate medical examiner’s testimony about findings in the autopsy report prepared by another medical examiner constituted testimonial hearsay and their admission violated the Confrontation Clause; but any error was harmless because other evidence supported the Commonwealth’s theory); State v. Sisneros, 314 P.3d 665 (N.M. 2013) (surrogate pathologist who was not present at autopsy testified about the cause and manner of death based on her review of the autopsy, though the autopsy report was not admitted into evidence; because the surrogate pathologist was allowed “to parrot” the subjective statements of the pathologist who conducted the autopsy, the Confrontation Clause was violated, but the error was deemed harmless because the 'cause and manner of death, multiple gunshot wounds, was not disputed); State v. Navarette, 294 P.3d 435 (N.M. 2013) (autopsy reports “regarding individuals who suffered a violent death are testimonial” and their admission through a surrogate pathologist witness who testified about the subjective findings and conclusions of the pathologist who conducted the autopsy violated the Confrontation Clause and constituted reversible error); State v. Locklear, 363 N.C. 438, 681 S.E.2d 293 (2009) (admission of testimony of a surrogate medical examiner about the contents of an autopsy report and a forensic dental analysis violated the Confrontation Clause but was harmless error because the testimony, which identified the victim’s body and cause of death, was not critical to the prosecution); State v. Flack, 232 W.Va. 708, 753 S.E.2d 761 (2013) (reiterated prior holdings that Confrontation Clause is violated when a surrogate medical examiner who did not conduct the autopsy testified about the contents of an autopsy report prepared by another pathologist; but because the testimony established merely that the cause of death was a gunshot wound and that the manner of death was homicide, the error was harmless).
¶ 102. In the present case, the testifying forensic pathologist, Dr. Erin Barnhart of the Mississippi State Medical Examiner’s Office, stated that she did not conduct autopsy procedures on the bodies of Robert Carter and Renita Marks. Dr. Adel Shaker, who was at the time of Christian’s *1230 trial no longer with the Mississippi State Medical Examiner’s Office, conducted the autopsies. According to Dr. Barnhart, “during the course of the autopsy the forensic pathologist will make some rough handwritten notes; some pathologists may dictate.during the course of their autopsy, and a number of photographs are taken during the autopsy in order to document whatever during .the procedure.” While Dr. Shaker did not write formal autopsy reports, Dr. Barnhart “reviewed the autopsy notes and the autopsy photographs” and made notes herself.
¶ 103. Based on the available materials, Dr. Barnhart concluded that “Mr. Carter sustained three gunshot wounds, two to his chest area and one to the lower abdomen area” and that “both gunshot wounds to the chest resulted in injury to the heart, and the gunshot wound to the abdomen resulted in soft tissue abrasion.” According to Dr. Barnhart, Renita Marks “suffered six gunshot wounds, five perforating ..., and one penetrating,”[10] Gunshot wounds “of her chest area and abdominal area” caused Marks’s death. With regard to both Carter and Marks, Dr. Barnhart testified that “the manner of death is homicide.”
¶ 104. The majority cites Bufford v. State, in which the Mississippi Court of Appeals quoted the rule from this Court that. “ ‘a supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was “actively involved in the production of the report and had intimate knowledge of anal-yses even though he or she did not perform the tests firsthand.””’ Bufford v. State, 191 So.3d 755, 763 (Miss. Ct. App. 2015) (quoting Grim, 102 So.3d at 1081) (quoting McGowen v. State, 859 So.2d 320, 340 (Miss. 2003)). The Court of Appeals was considering a case similar to this. Dr. Shaker had performed the victim’s autopsy, but Dr. Barnhart, as here, reviewed Dr. Shaker’s notes and photographs and “compiled an autopsy report from which she testified at trial.” Bufford, 191 So.3d at 763. The Court held that no Confrontation Clause violation had occurred by such testimony from Dr. Barnhart because she “actively participated in the analysis, forming her own report based on Dr. Shaker’s case notes and photographs as well as her education and experience.” Id. I voted to grant Bufford’s petition for writ of certio-rari, which was denied on May 19, 2016.
¶ 105. I am persuaded by the reasoning of those federal and state courts which have held that an autopsy report, whether itself admitted in evidence, testimonially related by a forensic pathologist or both, is testimonial. This Court has defined “testimonial statements” to be those “reasonably expected to be used ‘prosecutorially,’ such as confessions, affidavits, custodial police examinations, and depositions.’ ” Armstead, 196 So.3d at 917 (quoting Rubenstein v. State, 941 So.2d 735, 754 (Miss. 2006)). Irrespective of whether the results of an autopsy identify a particular defendant, which some courts deem relevant, an autopsy report in a homicide case reasonably is expected to be used prosecutorially. One commentator has observed that “[f]o-rensic pathologists are quite aware that their autopsy reports will be evidentiary and that the testimony of a forensic pathologist will be sought at trial.” Ginsberg, supra ¶ 98 at 171. The adjective forensic signals that the work product of the pathologist is destined for judicial proceedings.
¶ 106. Here, the State has adduced testimony from Dr. Barnhart about the autopsy findings of Dr. Shaker. A law enforcement investigator was present at the autopsies conducted by Dr. Shaker. Inves *1231 tigator Greg Lewis with the Hinds County Sheriffs Office testified that he “made it a practice to ... try to attend most of the autopsies of the cases that I work for various reasons to where I could take photographs at the autopsy if I needed to .... ” Investigator Lewis testified that, in this case, he “took photographs along with the medical examiner’s office .... ” He authenticated two such photographs he had taken during the autopsies. The results of the autopsies, about which Dr. Barnhart testified, were testimonial in nature, and the Confrontation Clause applies.
¶ 107. I would hold also that the Confrontation Clause requires the forensic pathologist who conducted the autopsy to testify regarding his or her conclusions. A surrogate forensic pathologist cannot, consistent with the Constitution, testify about the expert conclusions of the forensic pathologist who conducted the autopsy. In this context, a surrogate forensic pathologist who was not present at the autopsy cannot be cross examined in an adequate and meaningful way with regard to the findings of the forensic pathologist who conducted the autopsy. As I would have held in Hingle with regard to the testimony of the technical reviewer, here “surrogate testimony could not ‘expose any lapses or lies on the [conducting pathologist’s] part.’ ” Hingle, 153 So.3d at 669 (Chandler, J., dissenting) (citing Bullcoming, 131 S.Ct. at 2715). One commentator has observed that:
The only vehicle by which a criminal defendant may explore the subjectivity involved in the performance of the forensic autopsy—to question the judgment of the examining forensic pathologist—is cross-examination. The in-court testimony of the surrogate forensic pathologist who examines the autopsy report prepared by the examining pathologist is an inadequate substitute. The surrogate witness is not the physician who was required to be familiar with the facts and the autopsy protocol, examine the victim’s body, perform the autopsy procedure, make and report findings, and report the cause and manner of death. The cross-examination of the surrogate yields very little. The surrogate can rely on the autopsy findings with impunity. There is simply little to be gained by the defendant in the effort to cross-examine the surrogate. Cross-examination is the great truth-seeking test, but it is an empty exercise when the surrogate testifies at trial.
Ginsberg, supra ¶ 98 at 170.
¶ 108. Of course, any interpretation of the federal Constitution is subject to change by the United States Supreme Court, which has not decided whether the admission of autopsy reports or the testimony of surrogate forensic pathologists violates the Confrontation Clause. However, this Court, based on our state’s constitution, can afford greater constitutional protections by setting a higher standard than the federal floor. Downey v. State, 144 So.3d 146, 151 (Miss. 2014) (“We are empowered by our state constitution to exceed federal minimum standards of constitutionality ..'..”) Here, Christian has raised both the Sixth Amendment Confrontation Clause and its Mississippi counterpart, Article 3, Section 26, of the Mississippi Constitution. Irrespective of future federal jurisprudence on the topic, I would hold that the Confrontation Clause of Article 3, Section 26, of the Mississippi Constitution requires that the forensic pathologist who conducted and/or observed an autopsy testify about the results, reports, photographs, or notes derived therefrom.
¶ 109. Dr. Barnhart reviewed Dr. Shaker’s notes and photographs and made notes herself. But I cannot agree that the Confrontation Clause has been satisfied by her testimony. I would, however, find that, *1232 because Dr. Barnhart’s testimony established only that the deaths were caused by gunshot wounds, an undisputed fact, its admission in this case was harmless beyond a reasonable doubt. Accordingly, I concur in part and in result.
KING, J., JOINS THIS OPINION.

. Justice Alito authored an opinion, joined by Chief Justice Roberts and Justice Kennedy. Justice Breyer concurred in full with separate written opinion. Justice Thomas concurred only in the judgment and filed a separate written opinion. Justice Kagan dissented, joined by Justice Scalia, Justice Ginsburg, and Justice Sotomayor.

. Recently, I reiterated "that Jenkins, Grim, and Hingle ‘are inconsistent with the strictures of Bullcoming’ and 'I would overrule those cases.' ” Armstead v. State, 196 So.3d 913, 926 (Miss. 2016) (Kitchens, J., dissenting) (quoting Hingle, 153 So.3d at 670 (Chandler, J., dissenting)).

. Dr. Barnhart explained that "perforating’’ means “there's both an entry and exit component meaning that there’s no projectile left in the body.”