COLEMAN, Justice,
for the Court:
¶ 1. Danielle Hingle was convicted of sale of morphine, a controlled substance, and sentenced to fifteen years in the custody of the Mississippi Department of Corrections. On appeal, Hingle argues that admission of the testimony of a crime laboratory analyst who reviewed and signed the lab report but did not test the pills violated her Sixth Amendment right of confrontation. She also argues that the trial court erred by admitting the pills due to flaws in the chain of custody. We hold that the trial court did not err by allowing the reviewing analyst to testify or by allowing the pills to be admitted.
Factual Background
¶ 2. On June 21, 2011, Deputy Max Herring met confidential informant Billy Wheater for an undercover operation. After Wheater was searched, Herring, in an undercover role, drove Wheater to Hin-gle’s workplace, a Sonic restaurant in Horn Lake. A video was played at trial showing that, when they arrived, Hingle walked up to the passenger window and Wheater handed money to Hingle. Hingle then handed pills to Wheater. Hingle counted the money and thanked Wheater; then Herring drove off. Herring testified that Wheater held the package Hingle had given him until they arrived at the post-buy location, where Wheater gave the pills to Agent Coleman.[1] Coleman placed the pills in a bag, which he initialed and sealed. Wheater was searched at the post-buy location.
¶3. Gary Fernandez, a drug analyst with the Mississippi Crime Laboratory, testified that he reviewed the results of a test conducted by Bob Reed, which had concluded that the pills contained morphine. Fernandez testified that, although he had not observed Reed performing the test, he had reviewed Reed’s report line-by-line, had reached an independent conclusion that the pills contained morphine, and had signed the report as the technical and administrative reviewer. Hingle testified in her defense, and her primary defense theory was that Wheater had staged the sale to collect the confidential-informant fee. She admitted that Wheater had passed her money to “hold” for him, but she claimed that she had not given him drugs in exchange. She speculated that Wheater had produced the drugs after having concealed them from Herring by hiding them in his navel.
Analysis
¶ 4. Hingle claims that admission of Fernandez’s testimony violated her Sixth Amendment right of confrontation because he only signed off on the lab report, but did not test the pills. She also argues that the trial court erred by admitting the pills into evidence because the State failed to lay a proper foundation due to flaws in the chain of custody.
I. Admission of the reviewing analyst’s testimony did not violate Hingle’s right of confrontation.
¶ 5. Hingle argues that the lower court violated her right of confrontation because the State did not produce Bob Reed, the Mississippi Crime Laboratory analyst who actually tested the pills and determined that they contained morphine. Reed’s re *662 port was not admitted into evidence, so Hingle does not challenge the admissibility of the report through Fernandez’s testimony; she takes issue with his testimony only. Hingle failed to object to Fernandez’s testimony on Confrontation Clause grounds at trial, therefore, the issue is procedurally barred. Conners v. State, 92 So.3d 676, 682 (¶ 15) (Miss.2012). Thus, for reversal on the issue, plain error must have existed.
¶ 6. “Under the plain-error doctrine, we can recognize obvious error [that] was not properly raised by the defendant ... and which affects a defendant’s ‘fundamental, substantive right.’ ” Id. at 682 (¶ 15) (quoting Smith v. State, 986 So.2d 290, 294 (¶ 10) (Miss.2008)). We have held “that a Confrontation Clause violation is a violation of a ‘fundamental, substantive right.’ ” Conners, 92 So.3d at 682 (¶ 15). Therefore, although Hingle did not object at trial, it is appropriate to determine whether a Confrontation Clause violation occurred. For reversal under the plain error doctrine, there must have been an error that “resulted in a manifest miscarriage of justice.” Williams v. State, 134 So.3d 732, 736 (¶ 15) (Miss.2014) (citing Gray v. State, 549 So.2d 1316, 1321 (Miss.1989)). Even if there was an error of the nature alleged — and even if that error resulted in a violation of the Confrontation Clause — if the error did not result in “a manifest miscarriage of justice,” then it can be deemed harmless. Conners, 92 So.3d at 684-85 (¶¶ 20-21) (concluding that Conners’s right to confrontation was violated, but it did not result in a manifest miscarriage of justice, and the error was harmless).
¶ 7. Under both the United States Constitution and the Mississippi Constitution, an accused has a right to confront and cross-examine the witnesses against him. U.S. Const, amend VI; Miss. Const, art. 3 § 26 (1890). In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Id. at 68, 124 S.Ct. 1354. Generally, testimony is a “solemn declaration or affirmation made for the purpose of establishing or proving some fact.” Id. (citation omitted). Laboratory reports created to serve as evidence against the accused at trial are testimonial statements covered by the Confrontation Clause. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); Bullcoming v. New Mexico,-U.S.-, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011); Conners, 92 So.3d at 684 (¶ 19).
¶ 8. In Melendez-Diaz, the Supreme Court held that sworn certificates of analysis — stating that the substance taken from the defendant had been tested and found to be cocaine — were testimonial, therefore, the certificates were inadmissible unless the analysts who prepared them were unavailable and there had been a prior opportunity to cross-examine them. Melendez-Diaz, 557 U.S. at 311, 129 S.Ct. 2527. In Bullcoming, the State introduced a forensic laboratory report, which certified Bullcoming’s blood alcohol level, through an analyst who was familiar with the lab’s procedures but had not participated in or observed the testing of Bullcoming’s blood. Bullcoming, 131 S.Ct. at 2712. The Supreme Court held that the State’s use of a surrogate analyst “who did not sign the certification or perform or observe the test” fell short of satisfying Bullcoming’s right of confrontation. Id. at 2710.
¶ 9. Applying the rules from Melendez-Diaz and Bullcoming, we have held that a defendant’s right of confrontation is satis *663 fied by the testimony of an analyst who reviewed the report for accuracy and signed it as a technical reviewer. Grim v. State, 102 So.3d 1073, 1081 (Miss.2012); Jenkins v. State, 102 So.3d 1063, 1069 (Miss.2012). The Court wrote the following about the testifying analyst in Grim:
[The analyst] was able to explain competently the types of tests that were performed and the analysis that was conducted. He had performed “procedural checks” by reviewing all of the data submitted to ensure that the data supported the conclusions contained in the report. Based on the data reviewed, [he] had reached his own conclusion that the substance tested was cocaine. His conclusion was consistent with the report, and he had signed the report as the technical reviewer. [He] satisfied the McGowen test because he had “intimate knowledge” of the underlying analysis and the report prepared by the primary analyst.
Grim, 102 So.3d at 1081 (¶ 20) (citing McGowen v. State, 859 So.2d 320 (Miss.2003)). The instant case is similar to both Grim and Jenkins, in which the Court held that “a supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was actively involved in the production of the report and had intimate knowledge of anal-yses even though he .or she did not perform the tests first hand.” Grim, 102 So.3d at 1081 (¶ 22); Jenkins, 102 So.3d at 1069 (¶ 19) (internal citations omitted). In each ease, the Court held that the defendant “had the opportunity to confront and cross-examine [the analyst] at trial, which satisfied his Sixth Amendment right to confront the witness against him.” Grim, 102 So.3d at 1081 (¶ 22); Jenkins, 102 So.3d at 1069 (¶ 19).[2]
¶ 10. In Conners v. State, former Presiding Justice Carlson wrote a specially concurring opinion to expound on the admissibility of forensic laboratory reports that are testimonial in nature. Because “laboratory work and testing often involve multiple analysts,” there are instances .in which “someone other than the primary analyst who conducted the test can testify regarding the results.” Conners, 92 So.3d at 689-90 (¶ 39) (Carlson, P.J., specially concurring).
The central inquiry for whether a witness can satisfy a defendant’s right to confrontation is twofold. First, we ask whether the witness has “intimate knowledge” of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand. [McGowen, 859 So.2d at 340.] Second, we ask whether the witness was “actively involved in the production” of the report at issue. Id. We require a witness to' be knowledgeable about both the underlying analysis and the report itself to satisfy the protections of the Confrontation Clause. If an analyst can discuss competently the analysis performed, as well as the particular document being offered — in other words, the analyst can testify live regarding the testing, methodology, and results of the analysis, rather than simply relying on the document to speak for itself — a defendant is adequately protected by the Confrontation Clause. ...
Id. at 690 (¶ 41) (Carlson, P.J., specially concurring, joined by Waller, C.J., Diekin- *664 son, P.J., Randolph, Lamar, Kitchens, Chandler, and Pierce, J.J.) (emphasis added, footnote omitted). In Conners, two forensic reports that were testimonial in nature had been admitted at trial through a detective who “had no involvement whatsoever in the tests or the generation of the reports as a result of the tests.” Id. at 691 (¶ 44). Certainly, it was error for the reports to be admitted through the detective, but the Court still held that the error was harmless. Id.
¶ 11. In the instant case, the report itself was not admitted into evidence, but Fernandez testified about the results of the tests.[3] Fernandez provided meaningful testimony and adequately responded to all questions asked on direct and cross-examination. Fernandez was well versed in the general process for substance testing as well as the specific testing of the substance at issue. He explained that every test performed at the Mississippi Crime Laboratory must be reviewed by a second analyst of equal accreditation before the test is considered complete. The second analyst, or the “technical and administrative reviewer,” reviews the report “line by line to make sure everything is correct” and ensures that the “results are commensurate with the information provided by his instrumentation and his other tests.” The reviewing analyst reaches a conclusion based on his review of the report, and he signs the report if he is confident that it is correct.
¶ 12. Regarding the specific test at issue, Reed performed the original test on the substance, and Fernandez acted as the “technical and administrative review.” Fernandez explained that Reed “took one half of two tablets from this particular submission and then he extracted from them the suspected components of it, and he ran it on an instrument called the GC mass spec to determine exactly what was in [it].” Fernandez testifíéd that Reed’s test of the pills had revealed them to contain morphine. He testified that, as the technical reviewer, he went over Reed’s report in detail to ensure that it was correct, and he reached an independent conclusion that the pills contained morphine based his review of Reed’s work. Fernandez signed the report after reviewing it and reaching his own conclusion that the report was correct and that the substance was morphine.
*665 ¶ 13. Fernandez’s testimony about the report was admissible because Fernandez had intimate knowledge of the testing and he was actively involved in the production of the report because he served as the reviewing analyst. His signature as the reviewing analyst was required for the report to be completed. Fernandez competently diseussed the testing performed, the results of the analysis, and his role as the reviewing analyst. A review of the record of Fernandez’s testimony confirms that he answered every question posed to him on cross-examination by defense counsel and never averred that his role rendered him without the requisite knowledge to respond. The admission of Fernandez’s testimony was not error and did not result in prejudice to Hingle. Accordingly,- his testimony did not result in a “manifest miscarriage of justice.” Burdette v. State, 110 So.3d 296, 305 (¶26) (Miss.2013) (Where constitutional errors “did not prejudice the outcome of the trial, there was no manifest miscarriage of justice and no reversible error.”). Reversal under the plain error doctrine is not warranted.
II. The trial court did not err in admitting the pills into evidence.
¶ 14. The pills were admitted into evidence during Fernandez’s testimony. Hingle objected, arguing that the State had failed to lay a foundation for the admission of the pills because the chain of custody had not been established. The trial court overruled the objection and admitted the pills. We review the trial court’s admission of evidence for abuse of discretion. Deeds v. State, 27 So.3d 1135, 1141 (¶ 15) (Miss.2009).
¶ 15. Under Mississippi Rule of Evidence 901, “[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” Miss. R. Evid. 901(a). The State need not produce every person who has handled the evidence. Deeds, 27 So.3d at 1142 (¶ 20). “[F]or the defendant to show a break in the chain of custody, there must be an ‘indication or reasonable inference of probable tampering .with the evidence or substitution of the evidence.’ ” Id. (quoting Spann v. State, 771 So.2d 883, 894 (Miss.2000)). The defendant cannot meet her burden with a mere suggestion that tampering or substitution possibly has occurred. Deeds, 27 So.3d at 1142.
¶ 16. Hingle complains that the State did not account for what happened to the pills after Hingle gave them to Wheater and that nothing showed that the drugs were handled in a secure, controlled manner. Herring testified that, after Hingle gave the pills to Wheater, Wheater held them until they reached the post-buy location. At the post-buy location, Agent Coleman took the pills from Wheater, put them in a bag, and initialed and sealed the bag. Herring testified that Wheater was searched before and after the transaction. A photocopy of Exhibits 2 and 3, containing the pills, bears a notation stating “Coleman to Evidence 1846.” Fernandez testified that the barcode on the evidence bag that contained the pills showed that they were received by the crime lab and resealed after Reed tested them. The above-described facts do not support a reasonable inference of substitution or tampering. The trial court’s admission of the pills into evidence was not an abuse of discretion.
Conclusion
¶ 17. The admission of the reviewing analyst’s testimony did not violate Hingle’s right to confrontation, and Hingle’s chain-of-custody claim is without merit. We affirm the judgment of the DeSoto County Circuit Court.
*666 ¶ 18. CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF SEVEN (7) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. UPON RELEASE, APPELLANT SHALL BE PLACED ON EIGHT (8) YEARS POST-RELEASE SUPERVISION WITH THREE (3) YEARS OF REPORTING AND FIVE (5) YEARS OF NON-REPORTING, WITH CONDITIONS. SENTENCE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. APPELLANT SHALL PAY COURT COSTS, A FINE OF $1,000, CRIME VICTIM COMPENSATION FUND FEE OF $100, CRIME LAB FEE OF $707.15 AND RESTITUTION OF $200. APPELLANT IS GIVEN CREDIT FOR ONE (1) DAY SERVED.
WALLER, C.J., RANDOLPH, P.J., LAMAR AND PIERCE, JJ., CONCUR. CHANDLER, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND KING, JJ.

. Agent Coleman did not testify and his first name is not in the record.

. The dissenting justices would overrule Grim and Jenkins, saying they relied on pre-Bull-coming precedent. (Dis.0p.1l1127, 29.) , Be that as it may, that does not render Grim and Jenkins defective. In both cases, the Court recognized Bullcoming and Melendez-Diaz and addressed that line of cases in depth. See Jenkins, 102 So.3d at 1066-69 (¶¶9-19); Grim, 102 So.3d at 1078-81 (¶¶ 12-22).

. In a separate opinion in Bullcoming, Justice Sotomayor wrote about several circumstances to which Bullcoming did not apply, including instances "in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence.” Bull-coming, 131 S.Ct. at 2722 (Sotomayor, J., concurring in part) (citing Fed.R.Evid. 703). The Court had the opportunity to address that issue soon thereafter in Williams v. Illinois, -U.S.-, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012).
We now conclude that this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted. When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause. Applying this rule to the present case, we conclude that the expert's testimony did not violate the Sixth Amendment.
Williams, 132 S.Ct. at 2228. In the instant case, Fernandez was admitted as an expert to testify about the report, and the report was not admitted as evidence at trial. However, the instant case is distinguishable from Williams because, in addition to being an expert in the field, Fernandez also had firsthand knowledge about the specific report being discussed.