# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-00482-SCT

*JEFFREY DALE BUSBY a/k/a JEFFERY BUSBY*
*a/k/a JEFFEREY BUSBY a/k/a JEFF BUSBY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2024 |
| TRIAL JUDGE: | HON. CHARLES W. WRIGHT, JR. |
| TRIAL COURT ATTORNEYS: | EDWARD ANDERSON KRAMER |
| | THOMAS EUGENE WHITFIELD, JR. |
| | JAMES CORNELIUS GRIFFIN |
| | ERICH GREGG JERSCHEID |
| | KASSIE ANN COLEMAN |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | KASSIE ANN COLEMAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/13/2025 |
| MOTION FOR REHEARING FILED: | |

EN BANC.

MAXWELL, JUSTICE, FOR THE COURT:

¶1. A Clarke County jury convicted Jeffrey Dale Busby of selling a Schedule II substance. At trial, the State called drug-analysis expert Charlotte Cothern to testify that the substance Busby sold to a confidential informant was 2.84 grams of methamphetamine. Through Cothern, the State also introduced the lab report describing the drug-analysis results. On appeal, Busby asserts that Cothern's testimony and the report's admission violated his

constitutional right to confront the witnesses against him. According to Busby, because Cothern served as the technical reviewer of the drug analysis and not the initial analyst who ran the tests, Cothern could not testify about the test results or the report she co-signed.

¶2. But this Court's precedent has been clear and consistent—technical reviewers like Cothern may testify about testing results without violating the Confrontation Clause if the reviewer "was actively involved in the production of the report and had intimate knowledge of analyses even though she did not perform the tests first hand."[1] And here, the record shows Cothern was actively involved in the production of the lab report and had intimate knowledge of the analysis. So even though she did not physically perform the tests, she could testify about the results. Because no Confrontation Clause violation occurred—and because Busby raises no other issues on appeal—we affirm his conviction and sentence.

## Background Facts & Procedural History

¶3. The Quitman Police Department used a confidential informant (CI) to set up a controlled buy with Busby. The CI first met with the officers, who searched the CI's person and vehicle to ensure she did not already have any drugs. Then they fitted her with a concealed camera and gave her $80. Thirty minutes later, the CI returned without the cash but with a cigarette package containing what appeared to be a bag of methamphetamine.

¶4. A grand jury indicted Busby for the sale of 2.84 grams of methamphetamine, a

---

[1] **Grim v. State**, 102 So. 3d 1073, 1080-81 (Miss. 2012) (quoting **McGowen v. State**, 859 So. 2d 320, 340 (Miss. 2003)).

Schedule II controlled substance. *See* Miss. Code Ann. § 41-29-139(a)(1) (Rev. 2018). At trial, the State introduced the video and still shots from the hidden camera. The surveillance equipment captured Busby exchanging the cigarette package for the cash. The supervising officers who led the controlled buy and the CI both testified the cigarette pack contained methamphetamine.

¶5. The State also called Cothern, a forensic scientist with the Mississippi Forensics Laboratory who specializes in forensic drug analysis. Cothern testified she performed the technical review of the analysis of the substance recovered from the cigarette pack. Cothern explained that drug analysis is a two-step process. First, Cothern's co-worker Camille Roy opened the evidence bag, examined the substance, determined what tests to perform, and then ran the tests. Next, Cothern stepped in and reviewed the work packet Roy created, which included the weight of the substance, the physical description, the type of tests performed, and the details from the instrumentation. Cothern reviewed this data to make sure the findings for this specific case were correct. Then after reviewing the information, she co-signed the forensics report. Cothern testified that, based on this data, she formed her own independent opinion. And in her opinion, the substance was 2.84 grams of methamphetamine. The State then moved to introduce the lab report. The trial court admitted the report over Busby's objection. On cross-examination, Cothern confirmed she did not run the tests—Roy did. Rather, Cothern reviewed the instrumentation, the testing process, and the data collected. Busby renewed his objection to the report's admission,

3

which the court overruled.

¶6.     The jury found Busby guilty of selling a Schedule II controlled substance.  And the trial court sentenced him as a second-and-subsequent drug offender and habitual offender to forty years' imprisonment.[2]  *See* Miss. Code Ann. § 41-29-147 (Rev. 2018); Miss. Code Ann. § 99-19-81 (Rev. 2020).

## Discussion

¶7.     Busby raises one issue on appeal.  He asserts Cothern's testimony and the admission of the forensics report violated his Sixth Amendment right to confront the witnesses against him.  *See* U.S. Const. amend VI.  Specifically, he argues Cothern could not testify because she was  the technical reviewer of the drug analysis, not the analyst who conducted the actual testing.

¶8.     This Court reviews a Confrontation Clause objection de novo. ***Smith v. State***, 986 So. 2d 290, 296 (Miss. 2008) (citing ***Hayden v. State***, 972 So. 2d 525, 535-36 (Miss. 2007)).  And after review, we find neither Cothern's testifying that the substance was methamphetamine nor the admission of the lab report she co-signed violated Busby's confrontation right.

**I.      Under our clear and consistent precedent, actively involved technical reviewers may testify.**

¶9.     Applying our "intimate knowledge" and "active[] involve[ment]" test from ***McGowen***

---

[2] Busby does not challenge his sentence or his status as a second subsequent drug offender and habitual offender.

*v. State*, 859 So. 2d 320, 340 (Miss. 2003), this Court has consistently held that a technical reviewer like Cothern may testify without violating the Confrontation Clause. That is because she has her own personal knowledge and involvement in the testing process and report creation. ***Douglas v. State***, 378 So. 3d 361, 375-76 (Miss. 2024); ***Quinn v. State***, 398 So. 3d 256, 267-68 (Miss. 2024); ***Armstead v. State***, 196 So. 3d 913, 920-21 (Miss. 2016); ***Christian v. State***, 207 So. 3d 1207, 1223 (Miss. 2016) (Maxwell, J., specially concurring, joined by a majority of the Court); ***Hingle v. State***, 153 So. 3d 659, 662-63 (Miss. 2014); ***Galloway v. State***, 122 So. 3d 614, 636-38 (Miss. 2013); ***Grim***, 102 So. 3d at 1081; ***Jenkins v. State***, 102 So. 3d 1063, 1069 (Miss. 2012). The lab report the technical reviewer co-signed may also be admitted. *E.g.*, ***Quinn***, 398 So. 3d at 267-68; ***Grim***, 102 So. 3d at 1081; ***Jenkins***, 102 So. 3d at 1069. And that is exactly what happened here.

¶10. Cothern testified and presented the lab report in her capacity as the technical reviewer of the analysis of the substance Busby sold. Through her testimony, she demonstrated that she was "actively involved in the production of the report and had intimate knowledge of the analyses even though she did not perform the tests first hand." ***McGowen***, 859 So. 2d at 340. Thus, under this Court's clear and consistent precedent, no Confrontation Clause violation occurred.

> **II. Our technical-reviewer decisions do not conflict with Supreme Court precedent.**

¶11. While our ***McGowen*** opinion predated the Supreme Court's ***Crawford***, ***Melendez-***

5

*Diaz*, and *Bullcoming* decisions,[3] this Court has found no conflict between those decisions and our approach. Instead, "[a]pplying the rules from *Melendez-Diaz* and *Bullcoming*, we have held that a defendant's right of confrontation is satisfied by the testimony of an analyst who reviewed the report for accuracy and signed it as a technical reviewer." *Hingle*, 153 So. 3d at 662-63 (citing *Grim*, 102 So. 3d at 1081; *Jenkins*, 102 So. 3d at 1069). Similarly, the Fifth Circuit has agreed that our allowing the technical reviewer to testify about a report he or she reviewed and co-signed is permissible. *Grim v. Fisher*, 316 F.3d 296 (5th Cir. 2016). Such testimony does not run afoul of established Supreme Court precedent, namely *Bullcoming*'s prohibition against the state's "introduc[ing] a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Grim*, 316 F.3d at 307-08 (5th Cir. 2016) (quoting *Bullcoming*, 564 U.S. at 652).

¶12.    At most, the Fifth Circuit observed, *Bullcoming* established that "the Confrontation Clause forbids the prosecution from proving [a] particular fact through the in-court testimony of a scientist or analyst who neither signed the [testimonial] certification nor performed or observed the test reported in the certification." *Grim*, 316 F.3d at 307. "*Bullcoming* does not clearly establish what degree of involvement with the forensic testing, beyond what was

---

[3] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011).

present in **Bullcoming**, is required of a testifying witness."[4] **Grim**, 316 F.3d at 307; *see also* **Bullcoming**, 564 U.S. at 672 (Sotomayor, J., concurring in part) ("highligh[ting] some of the factual circumstances that this case does *not* present[,]" including "a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue" (emphasis added)). Notably, when asked to review the Fifth Circuit's conclusion that **Bullcoming** does not prohibit—in fact it does not even address—the situation of when the technical reviewer testifies, the Supreme Court denied certiorari review. **Grim v. Fisher**, 580 U.S. 890, 137 S. Ct. 211, 196 L. Ed. 2d 163 (2016) (mem.).

¶13. While the Supreme Court has never prohibited a technical reviewer from testifying, we pause to address the Supreme Court's recent decision, **Smith v. Arizona**, 602 U.S. 779, 144 S. Ct. 1785, 219 L. Ed. 2d 420 (2024). In a concurring opinion, Presiding Justice Coleman contends allowing Cothern to testify as technical reviewer and sponsor of the report she co-signed is somehow out of step with **Smith**. But before we throw out two decades of precedent—which is what the concurrence implicitly suggests we do—we must ask if the

---

[4] The Fifth Circuit went onto illustrate in **Grim**, 316 F.3d at 307—

In other words, at most, **Bullcoming** holds that if scientist A performed the test, the prosecution cannot prove a particular fact contained in scientist A's testimonial certification by offering the in-court testimony of scientist B, if scientist B neither signed the certification nor performed or observed the test. But **Bullcoming** does not hold that scientist B cannot testify even if he has a sufficient degree of involvement with the forensic testing.

7

Supreme Court in *Smith* actually called out our permitted practice of allowing a technical reviewer's testimony when the reviewer was actively involved and had intimate knowledge of the analyses.

¶14.     According to the Supreme Court in *Smith*, "[t]he question presented . . . concerned the application of [established Confrontation Clause] principles to a case in which an expert witness restates an absent lab analyst's factual assertions to support his own opinion testimony." *Smith*, 602 U.S. at 783.   In that case, an independent expert had been called to give opinion testimony about a forensics report—a report he admittedly had *zero* involvement in creating.  *Smith*, 602 U.S. at 790.  The Arizona court justified his testifying about the report based on precedent that held that the "underlying facts" in the report were not hearsay[5] because they were "used only to show the basis of [the in-court witness's] opinion and not to prove their truth." *Smith*, 602 U.S. at 792 (alteration in original) (quoting *State ex rel. Montgomery v. Karp*, 336 P.3d 753, 757 (Ariz. Ct. App. 2014), *abrogated by Smith*, 602 U.S. 779).   On certiorari review, the Supreme Court conceded Arizona's precedent was akin to the plurality opinion in *Williams v. Illinois*, 567 U.S. 50, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012).  *Smith*, 602 U.S. at 786-89.

¶15.     *Williams* had affirmed a state appellate court's holding that the state's forensics expert

---

[5] The Confrontation Clause bars "testimonial hearsay"—i.e., "testimonial statements" that are hearsay, i.e., "out-of-court statements offered 'to prove the truth of the matter asserted.'" *Id.* (quoting *Anderson v. United States*, 417 U.S. 211, 219, 94 S. Ct. 2253, 41 L. Ed. 2d 20 (1974)). So if a statement is not hearsay, it does not fall under the Confrontation Clause's prohibition.

8

could testify about DNA results from a private lab without violating the Confrontation Clause when the expert is merely "disclos[ing] 'underlying facts and data' for 'the purpose of explaining the basis for [her] opinion.'" *Smith*, 602 U.S. at 787 (second alteration in original) (quoting *People v. Williams*, 939 N.E.2d 268, 278 (Ill. 2010)). In such a case, the lab results are "not admitted 'for the truth of the matter asserted.'" *Id.* (quoting *Williams*, 939 N.E.2d at 278)). While *Williams* failed to produce a majority opinion, "[f]our Members of the [Supreme] Court approved the Illinois Supreme Court's approach to 'basis evidence,' and agreed that [the expert's] recitation of the private lab's findings served 'the legitimate nonhearsay purpose of illuminating the expert's thought process.'" *Smith*, 602 U.S. at 788 (quoting *Williams*, 567 U.S. at 78).

¶16. *Smith* aimed at clearing up the confusion the Supreme Court had created by the *Williams* plurality. *Smith*, 602 U.S. at 786-89. Simply put, the *Smith* majority essentially held that such reasoning does not pass the smell test. The *Smith* majority concluded that, "[i]f an expert for the prosecution conveys an out-of-court statement in support of his opinion, and the statement supports that opinion only if true, then the statement has been offered for the truth of what it asserts." *Id.* at 795. And courts cannot make an end run around the Confrontation Clause by claiming the underlying facts are only being offered to explain an independent opinion. *Id.* at 795, 799.

¶17. Turning back to this case, had our justification for allowing technical reviewers to testify been that these witnesses are independent experts who are only conveying facts from

forensics reports to support their expert opinion and not to convey their truth, then yes, we would agree with the concurrence that *Smith* stops such reasoning in its tracks. But we have not based our decisions sanctioning technical-reviewer testimony on the reasoning rejected in *Smith*—that the findings in forensic reports were not being offered for their truth. Indeed, this Court has never relied on the now-rejected *Williams* plurality to justify a technical reviewer's testimony. In fact, in *Galloway*, a majority of the Court specifically rejected the dissenting opinion's contention that, in cases of technical reviewers testifying, "our analysis should proceed under the Supreme Court's reasoning in *Williams*, not this Court's reasoning in *Grim*."[6] *Galloway*, 122 So. 3d at 683 (Kitchens, J., dissenting).

¶18.  Instead of relying on the independent expert/non-hearsay justification, the *McGowen* rationale has always been that the testifying analyst was "actively involved in the production of the report and had intimate knowledge of analyses even though [he or] she did not perform the tests first hand." *Grim*, 102 So. 3d at 1081 (alteration in original) (quoting *McGowen*, 859 So. 2d at 340). Just as *Bullcoming* did not speak directly to this scenario,[7] neither does *Smith*. After all, baked into the question in *Bullcoming* was the presumption that the State introduced "a forensic laboratory report containing a certification—made for the purpose of

---

[6] Further, in *Hingle*, we noted that, in contrast to the independent expert in *Williams*, the technical reviewer who testified in *Hingle* "had first-hand knowledge about the specific report being discussed." *Hingle*, 153 So. 3d at 664 n.3; *see also Grim*, 102 So. 3d at 1079 n.3 (acknowledging that *Williams* recently handed down but "ha[d] no bearing on the case at hand").

[7] *See Grim*, 316 F.3d at 307.

10

proving a particular fact." ***Bullcoming***, 564 U.S. at 652. And what the Court in ***Smith*** did was head off an attempted end-run around ***Bullcoming***'s prohibition of surrogate testimony by labeling it independent expert testimony.

¶19.   What ***Smith*** does not appear to address, just as ***Bullcoming*** did not address, is the question presented here—when does a testifying analyst becomes sufficiently involved in the process to give her *own* testimony based on the report she co-signed. ***Bullcoming***, 564 U.S. at 672 (Sotomayor, J., concurring in part) ("[T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue."); *see also* ***Commonwealth v. Douglas***, 2025 PA Super 230, 2025 WL 2836570, at * 9 (Pa. Super. Ct. Oct. 7, 2025) (finding that, in contrast to ***Smith***, the expert report was not hearsay because the reviewing analyst who testified reported his independent opinion).

¶20.   Accordingly, we find no reason to abandon our clear precedent "that a defendant's right of confrontation is satisfied by the testimony of an analyst who reviewed the report for accuracy and signed it as a technical reviewer." ***Hingle***, 153 So. 3d at 662-63 (citing ***Grim***, 102 So. 3d at 1081; ***Jenkins***, 102 So. 3d at 1069). As Cothern testified, the drug analysis performed in Busby's case was a two-step process. Cothern's co-worker Roy created the data by testing the substance. And Cothern reviewed the data and the testing process for accuracy. Cothern then formed her *own* conclusion that the substance tested was methamphetamine. After doing so, Cothern co-signed the report stating that the substance

11

was methamphetamine. Factually, Cothern's level of familiarity with the testing process and involvement in the report creation is almost indistinguishable from the technical reviewer allowed to testify in *Hingle*.[8] *Id.* at 661 ("Fernandez testified that, although he had not observed Reed performing the test, he had reviewed Reed's report line-by-line, had reached an independent conclusion that the pills contained morphine, and had signed the report as the technical and administrative reviewer."). Thus, under this Court's clear precedent, Cothern could testify about the findings contained in and sponsor the admission of the report.

¶21.　This Court has consistently rejected Busby's and the concurrence's suggestion that only the person who physically stuck the substance in the machine can testify. *Grim*, 102 So. 3d at 1081. Because Busby fails to show reversible error occurred, we affirm his conviction and sentence.

¶22.　**AFFIRMED.**

　　　**RANDOLPH, C.J., CHAMBERLIN, GRIFFIS AND BRANNING, JJ., CONCUR. COLEMAN, P.J., CONCURS IN RESULT ONLY WITH SEPARATE**

---

[8] Notably, Presiding Justice Coleman authored *Hingle*, a case in which the testifying analyst did not observe the test being performed. *Hingle*, 153 So. 3d at 661. While Presiding Justice Coleman "disagree[s] with [our] characterization of Cothern's involvement with the testing of the methamphetamine at issue," he fails to explain why the technical reviewer's involvement was active enough in *Hingle* but not here. CIRO Op. ¶ 24. This case is factually indistinguishable from *Hingle*, except for the report forming the basis of the testimony not being admitted into evidence. So the only conclusion to be drawn is that based on *Smith*, Presiding Justice Coleman no longer considers *Hingle*, *Douglas*, *Quinn*, *Armstead*, *Christian*, *Galloway*, *Grim*, and *Jenkins* good law. But as discussed, after carefully considering *Smith*, we do not see that case addressing, let alone clearly prohibiting, testimony from an analyst who was involved in the testing process, just not as the primary analyst that handled the substance.

**WRITTEN OPINION JOINED BY KING, P.J., ISHEE AND SULLIVAN, JJ.**

**COLEMAN, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶23.    In the case sub judice, the testifying witness, Charlotte Cothern, did not have sufficient familiarity with the methamphetamine or the testing of it.  As a result, her testimony and the report were admitted in violation of United States Supreme Court Confrontation Clause jurisprudence.  I nevertheless agree with the majority's affirmance of Busby's conviction because, to the extent that there was any Confrontation Clause related error, it was harmless.

> I.      **Cothern never saw the substance at issue and therefore had no personal knowledge of many of the facts introduced via her testimony.**

¶24.    At the outset, I disagree with the majority's characterization of Cothern's involvement with the testing of the methamphetamine at issue.  The majority writes that Cothern "was actively involved in the production of the report and had intimate knowledge of analyses even though she did not perform the tests first hand." Maj. Op. ¶ 2 (internal quotation marks omitted) (quoting ***Grim v. State***, 102 So. 3d 1073 (Miss. 2012)).  In fact, Cothern testified that she never even saw the methamphetamine.  Her testimony indicates that she had no involvement in preparing the report but only reviewed it once complete.  During the cross-examination of Cothern, the following exchange took place:

> A.      So the analyst who performed this test was Camille Roy.

> Q.      And in your capacity as technical reviewer, you just reviewed the instrumentation and her processes to make sure everything was

13

copacetic?

A. I'm reviewing the work packet and all the data that comes with that, yes.

Q. *Did you ever see the alleged narcotics?*

A. *No.*

(Emphasis added.) After Cothern's testimony that she never saw the substance at issue, defense counsel objected to her testimony, and the trial court overruled the objection.

¶25. Pursuant to the above-quoted testimony, the testifying witness, Cothern, had no personal knowledge of the vast majority of the facts that were admitted into evidence through her testimony, including, *inter alia*, the following:

1. That the substance was subjected to two different types of testing, a secondary amine test and a gas chromatograph mass spectrometer;

2. That the secondary amine test resulted in a blue color that indicated methamphetamine;

3. That the testing analyst, Roy, received the methamphetamine, cut it open, and made observations regarding its appearance; and

4. The weight, color, and other physical characteristics of the methamphetamine.

Because Cothern neither saw the substance nor participated in testing it, the only way in which she could testify regarding the above-listed facts was to learn them from the one person identified in the record who did have personal knowledge of them, the absent testing analyst, Roy. It is simply not accurate that Cothern was sufficiently involved in the testing of the methamphetamine. In reality, she had no involvement with the testing, and she only

14

reviewed the testing methodology and results after the fact.

¶26. The majority's view of the effect of *Smith v. Arizona*, 602 U.S. 779 (2024), is incomplete. I agree that *Smith* heads off attempted end-runs around *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), but it does so by making clear that the testifying expert must have personal knowledge of testimonial facts that come into evidence in support of the witness's opinion. *Smith*, 602 U.S. at 779. That the label *technical reviewer* is applicable to Cothern does not change the fact that, like the testifying witness in *Smith*, she had no part in the actual testing of the methamphetamine and gained her information, which she then relayed to the jury, from Roy's observations, testing, and knowledge. The *Smith* Court pointed out that the testifying witness there "prepared for trial by reviewing [the analyst's] report and notes." *Id.* at 791. Cothern's testimony in today's case indicates a similar method and level of preparation. Just like Cothern as technical reviewer, the testifying witness in *Smith* could describe the methods used to analyze the substance at issue and testify that the methods adhered to the correct scientific principles. *Id.* What matters, though, is that neither the testifying witness in *Smith* nor Cothern in the case *sub judice* had any personal involvement with the testing of the substance itself or personal knowledge of the substance itself.

II. **In *Smith*, the Supreme Court reestablished that allowing a reviewing analyst, who relies on a testing analyst's personal knowledge of the facts surrounding laboratory analysis but lacks personal knowledge of the facts herself, violates the Confrontation Clause.**

15

¶27. The Confrontation Clause "applies only to testimonial hearsay[.]" *Smith*, 602 U.S. at 792 (internal quotation marks omitted) (quoting *Davis v. Washington*, 547 U.S. 813, 823 (2006)). "Generally, testimony is a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Hingle v. State*, 153 So. 3d 659, 662 (¶ 7) (Miss. 2014) (quoting *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). Hearsay is "a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c).

¶28. In *Melendez-Diaz v. Massachusetts*, the Supreme Court held that it was an unconstitutional Confrontation Clause violation for the prosecution to introduce a certificate of analysis that provided the crime lab's identification of cocaine rather than calling to testify the analyst who conducted the tests and signed the certificate. *Smith*, 602 U.S. at 785 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308, 312 (2009)).

¶29. In 2011, building on *Melendez-Diaz*, the *Bullcoming* Court similarly held that the prosecution could not introduce one lab analyst's report through another analyst's testimony. *Smith*, 602 U.S. at 786 (citing *Bullcoming*, 564 U.S. at 651-52). There, the Court determined that the substitute analyst's testimony violated the Confrontation Clause because that analyst could not convey what the testing analyst knew or observed about the tests employed. *Id.* (citing *Bullcoming*, 564 U.S. at 661).

¶30. Thereafter, our Court decided a litany of cases relying on *Melendez-Diaz* and

16

*Bullcoming*, although most cases were distinguished from the two. First, and in line with *Melendez-Diaz*, our Court in *Conners v. State* held that it was error to admit two forensic reports—a ballistics report and a toxicology report—into evidence through a detective's testimony who had no involvement with the creation of either report. *Conners v. State*, 92 So. 3d 676, 682 (¶¶ 13-15) (Miss. 2012).

¶31.    Next, in *Grim*, our Court held that it was not error for a technical reviewer to testify regarding a report's findings, despite not performing the analysis firsthand, because they were adequately involved in the testing process. *Grim*, 102 So. 3d at 1081 (¶ 22) (Miss. 2012). The Court concluded that the technical reviewer had "intimate knowledge" of the analysis and report as demonstrated by the fact that they (1) competently explained the types of tests and analyses conducted, (2) performed procedural checks by reviewing the data to ensure it supported the report's conclusions, (3) reached an independent conclusion regarding the substance tested, and (4) signed the report. *Id.* (¶ 20) (internal quotation marks omitted) (quoting *McGowen v. State*, 859 So. 2d 320, 340 (Miss. 2003)).

¶32.    Similarly, in *Galloway v. State*, the Court held that it was not error for the technical reviewer to testify about the report because the technical reviewer was familiar with the primary analyst's testing process and had personally performed an analysis of the data derived from the tests, also signing the report. *Galloway v. State*, 122 So. 3d 614, 637 (¶ 48) (Miss. 2013). As such, because of the technical reviewer's familiarity with the data, we concluded that the technical reviewer could have answered any question regarding the

17

report's accuracy. *Id.*

¶33. In *Hingle*, our Court acknowledged that it did not have to decide whether the forensic report was improperly admitted, as in *Conners*, because the report itself was not admitted in evidence. *Hingle*, 153 So. 3d at 663 (¶ 10) (citing *Conners*, 92 So. 3d at 690 (¶ 41)). However, in deciding that the witness properly testified regarding the report's test results, we relied on *Grim*, *Conners*, and *McGowen* to hold that the witness had intimate knowledge of the testing and was actively involved in the production of the report as the reviewing analyst. *Hingle*, 153 So. 3d at 663, 665 (¶¶ 9, 13) (citing *Grim*, 102 So. 3d at 1081; *Conners*, 92 So. 3d at 690; *McGowen*, 859 So. 2d at 340).

¶34. The common theme that unites our cases, discussed above, wherein we have affirmed admission of reports and testimony regarding forensic analysis has been the familiarity of the testifying witness with the testing process. A recent case from the Supreme Court, though, has clarified the level of familiarity necessary to avoid running afoul of that Court's precedent.

¶35. In *Smith*, the Supreme Court affirmed the rules established in both *Melendez-Diaz* and *Bullcoming*. *Smith*, 602 U.S. at 779, 798 (citing *Melendez-Diaz*, 557 U.S. 305; *Bullcoming*, 564 U.S. 647). Specifically, the *Smith* Court restated that forensic reports fall under the Confrontation Clause's umbrella of protection. *Id.* at 779, 783, 785 (citing *Melendez-Diaz*, 557 U.S. at 307, 308, 329). Additionally, it reaffirmed the notion that "a prosecutor cannot introduce an absent laboratory analyst's testimonial out-of-court statements

18

to prove the results of forensic testing." ***Id.*** at 783 (citing ***Melendez-Diaz***, 557 U.S. at 307, 329). Further, it ruled that the Confrontation Clause bars the admission of an expert's testimony that is based on an absent analyst's report to prove the truth of the matter asserted. ***Id.*** The ***Smith*** Court so held despite the testifying expert's high level of familiarity with the tests used by the lab technician who actually ran the tests. ***Id.*** at 791, 797.

¶36. As discussed by the majority, the ***Smith*** Court overruled the plurality decision in ***Williams v. Illinois***, 567 U.S. 50 (2012). The majority interprets the ***Smith*** Court's treatment of ***Williams*** as narrow and not relevant to our line of cases allowing technical reviewers to testify as to out-of-court statements by testing analysts. I disagree. The majority dismisses the ***Smith*** Court's treatment of ***Williams*** because our Confrontation Clause cases do not rely on the argument in play in ***Williams***, *i.e.*, that findings in forensic reports are not being offered for their truth and therefore are admissible. ***Williams***, 567 U.S. at 86. The majority is correct there. However, the basis for the ***Smith*** Court's rejection of ***Williams***, *i.e.*, that those findings are testimonial facts that must be subject to cross-examination to satisfy Confrontation Clause protections renders Cothern's testimony, in which she relayed Roy's factual knowledge of the methamphetamine to the jury, violative of Supreme Court precedent.

III. **The admission of Cothern's testimony, in which she related facts not within her personal knowledge, violates the Confrontation Clause according to United States Supreme Court precedent.**

¶37. While the State does not concede that the admission of Cothern's testimony and the

19

report were error, it does not present for our consideration the argument adopted by the majority, *i.e.*, that the testimony and report do not violate the Supreme Court's Confrontation Clause jurisprudence. Instead, the State argues only that the error, if any, was waived by Busby's failure to object and was harmless.

¶38. As reiterated by the **Smith** Court, "an absent laboratory analyst's testimonial out-of-court statements to prove the results of forensic testing[,]" as well as in-court testimony in reliance thereof, is prohibited. **Smith**, 602 U.S. at 783 (citing **Melendez-Diaz**, 557 U.S. at 307, 329). Roy, an absent witness, stated via the forensic report that the tested substance was 2.84 grams of methamphetamine. Cothern repeated that fact in her testimony, although she had no personal knowledge of it and could only relay it to the jury because she learned it from Roy. In **Melendez-Diaz**, the United States Supreme Court emphasized that, included within "the class of testimonial statements covered by the Confrontation Clause" are "extrajudicial statements . . . contained in formalized testimonial materials . . . made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." **Melendez-Diaz**, 557 U.S. at 310 (first alteration in original) (quoting **Crawford**, 541 U.S. at 51-52).

¶39. The report in the case *sub judice* was without question made for use in a criminal proceeding; Roy was an analyst with the Mississippi Forensics Laboratory, the report clearly states that the evidence was received from the Clarke County Sheriff Office, and the subject of the analysis is referred to as evidence to be "[e]xamine[d] for the presence of a controlled

substance." The statement identifying the substance as methamphetamine was testimonial, and Cothern's testimony identifying the substance relied upon Roy's testimonial statements. As the *Smith* Court wrote of the testimony at issue there, all of Cothern's opinions were predicated on the truth of Roy's personal knowledge of the substance's characteristics and the test results. 602 U.S. at 798. The jury that convicted Busby could accept the truth of Cothern's opinions only if it also accepted the truth of Roy's statements regarding the substance that, again, Cothern never even saw. *Id.* If Roy had lied or been mistaken about her observations, testing, and conclusions, then Cothern's opinions would have "counted for nothing." *Id.* However, like the actual testing technician in *Smith*, Roy was absent from trial, and Busby could ask her no questions. *Id.*

¶40. In the end, the label *technical reviewer* cannot by itself avert Confrontation Clause issues. Cothern as technical reviewer had no more personal knowledge of the methamphetamine or the testing of it here than the testifying witness in *Smith* had of the substance at issue there. Had Cothern been present with Roy as she performed the weighing and testing of the methamphetamine, she would then potentially have the personal knowledge that, in this case, only Roy had. She was not, and therefore had to rely on Roy's out-of-court, testimonial statements when she offered her testimony at Busby's trial.

### IV. Although Cothern's testimony violated United States Supreme Court Confrontation Clause jurisprudence, any error leading to its admission was harmless beyond a reasonable doubt.

¶41. "Harmless errors are those 'which in the setting of a particular case are so unimportant

21

and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Conners*, 92 So. 3d at 684 (¶ 20) (quoting *Chapman v. California*, 386 U.S. 18, 22 (1967)). A constitutional error "may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." *Haynes v. State*, 934 So. 2d 983, 991 (¶ 31) (Miss. 2006) (internal quotation mark omitted) (quoting *Clark v. State*, 891 So. 2d 136, 142 (Miss. 2004)).

¶42. Returning to the present case, the State presented cumulative testimony that the substance was methamphetamine. The State emphasizes Officer Justin Rawson, Agent Macy Torrey, and Jessica Satcher's testimonies identifying the substance as methamphetamine, without objection. Additionally, the jury observed the footage of the sale and pictures of the substance. Busby's attorney never asked any question of Cothern that she was unable to answer because the question sought information that was outside of her personal knowledge, nor did counsel make any other attempt to discredit her testimony. *See Morrow v. State*, 275 So. 3d 77, 82 (¶¶ 18-19) (Miss. 2019) (noting that the absence of attempts by counsel to discredit or question objectionable testimony weighed against finding plain error). So I agree with the State. The cumulative evidence establishing the substance as methamphetamine, all without objection, renders any Confrontation Clause violations harmless error.

## CONCLUSION

¶43. I disagree with the majority's holding that the admission of the report and Cothern's

22

testimony does not run afoul of the Supreme Court's Confrontation Clause precedent, but any error that led to its admission was here harmless. Accordingly, and with respect, I concur in result only.

**KING, P.J., ISHEE AND SULLIVAN, JJ., JOIN THIS OPINION.**